# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN LINDKE,
    Plaintiff,

    v.

CYNTHIA A. LANE, a Michigan
state court judge, being sued in her
official capacity,
    Defendant

_____/

Case No.: 19-cv-11905
Honorable Mathew F. Leitman

**RESPONSE**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

FLETCHER FEALKO SHOUDY &
FRANCIS PC
TODD J. SHOUDY (P41895)
Attorney for Defendant
1411 3rd St, Ste F
Port Huron, MI 48060
(810) 987-8444
(810) 987-8149 – fax
tshoudy@fletcherfealko.com

---

## RESPONSE IN OPPOSITION TO
## DEFENDANT'S PRE-ANSWER MOTION TO DISMISS

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**ISSUES PRESENTED**

Should Defendant's motion to dismiss be granted?

Answer:
No

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## MOST CONTROLLING AUTHORITY

*McGlone v. Bell*,
681 F.3d 718 (6th Cir. 2012)

*Zinermon v. Burch*,
494 U.S. 113 (1990)

*Skinner v Switzer*,
131 S. Ct. 1289 (2011)

*Marks v. Stinson*,
19 F.3d 873 (3rd Cir. 1994)

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989)

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*,
457 U.S. 423 (1982)

*Fieger v. Thomas*,
74 F.3d 740 (6th Cir. 1996).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## INTRODUCTION

A prior restraint is any law or order forbidding certain communications when issued in advance of the time that such communications are to occur. *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012). Such comes to this Court "with a heavy presumption" of <u>un</u>constitutionality under the First Amendment. *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963). Courts, too, are bound by the First Amendment. *Citizens United v. F.E.C.*, 558 U.S. 310, 326 (2010). Moreover, when the government must provide due process, certain basic safeguards such as notice and an opportunity to be heard must be provided. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 US 306, 313 (1950); *Zinermon v. Burch*, 494 US 113, 125 (1990). Failure to do so violations due process. Here, however, the Michigan non-domestic personal protection order (PPO) statute satisfies neither. As such, it is unconstitutional as authoritatively construed.

## FACTS

## I. BACKGROUND ON THE NON-DOMESTIC PPO STATUTE

The Michigan nondomestic PPO statute allows a private party to file a petition for entry of a personal protection order to enjoin certain conduct that is prohibited under section 411h, 411i, or 411s of the Michigan penal code, being MCL 750.411h, 750.411i, and 750.411s. Relief can be sought on an

1

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*ex parte* basis. MCL 600.2950a(a). Expressly, "a court shall not grant relief under this subsection unless the petition alleges facts that constitute stalking as defined in section 411h or 411i, or conduct that is prohibited under section 411s, of the Michigan penal code, 1931 PA 328, MCL 750.411h, 750.411i, and 750.411s." *Id.* Under all sections, constitutionally protected activities are exempted from coverage. MCL 750.411h(1)(c); MCL 750.411i(1)(d); MCL 750.411s(6). Of particular relevance to this case, an *ex parte* PPO may enjoin the "posting a message through the use of any medium of communication, including the Internet or a computer or any electronic medium." MCL 750.411s. Under Section 411s, the act proscribed is only the message that could further "*cause*," not is, "two or more separate noncontinuous acts of unconsented contact with the victim." MCL 750.411s(1)(a). In construing the statute, the Michigan non-domestic PPO statute has been authoritatively construed to mean that <u>any</u> posts to social media sites, like Facebook, are able to be enjoined under this provision. Such a statute is clearly unconstitutional.

A petitioner (a private citizen) can seek *ex parte* entry of such an order. No notice or opportunity to be heard is granted to the respondent to challenge the prior restraint before it is entered. MCL 600.2950a(1). Upon entry of that order, it is immediately effective without notice to the respondent

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

or the opportunity for the respondent to first be able to point out any errors, falsities, or legal impediments to such a prior restraint. MCL 600.2950a(9). There is no automatic follow up hearing (like for example done for TROs under Rule 65 of the Federal Rules of Civil Procedure). The issued *ex parte* PPO is entered into the Michigan "Law Enforcement Information Network" (LEIN) and such "scarlet letter" can never be removed. *Lipscombe v. Lipscombe*, unpublished decision of the Court of Appeals, issued Feb 4, 2010 (Docket No. 287822) ("there is no statutory provision to address removal from the LEIN"). It is permanently on a person's government record. MCL 600.2950a(19)-(20). LEIN is accessible by law enforcement officials throughout Michigan.[1] Moreover, there is no allowable appeal of right from such an *ex parte*, non-noticed order. MCR 3.709(B)(1). Instead, a respondent must first file a post-issuance motion to terminate or modify the PPO only after they become aware of it. But even if successful, the scarlet letter of the PPO remains in the LEIN database <u>indefinitely</u>. MCL

---

[1] This includes the Michigan Department of Health and Human Services, certain private security entities, public housing agencies, Michigan Department of Natural Resources, the Michigan Unemployment Insurance Agency, any agency that has as part of its responsibilities, matters of adoption, custody and/or support of children, any administrative agency of state government who are responsible for the enforcement and compliance with state regulated occupational or professional licenses or certificates, public schools, 911 authorities, fire departments, weighmasters, animal control officers, city and township attorneys, and child watch programs. See LEIN POLICY MANUAL, *available at* https://bit.ly/30IfhKb.

600.2950a(19)-(20). Entry of PPOs into LEIN have huge collateral consequences for the respondent, including being used as justification for termination of parental rights. **Exhibit A.**[2]

It is important for this Court to understand what is being challenged in this case. As discussed below, this case is seeking to challenge unconstitutionality of the Michigan non-domestic PPO statute itself as authoritatively construed—a specialized lawsuit authorized by the US Supreme Court in *Skinner v Switzer*, 131 S. Ct. 1289 (2011). In Michigan, trial court judges can and do authoritatively construe the meaning of a statute. Because trial judges are presumed to know the law, *People v. Garfield*, 166 Mich. App. 66, 79 (1988), and thus knows that any "statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected

---

[2] In reviewing a Rule 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). In reviewing a motion to dismiss, this Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Id.* The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. *Id.* (citing *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir. 1991)). The complaint need only state a claim that is merely *plausible* on its face, i.e., the court must be able to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The judge must treat the allegations as true even if "doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

expression," the Michigan non-domestic PPO statute is authoritatively construed as binding precedent upon Plaintiff, see *Gooding v. Wilson*, 405 U.S. 518, 520-521 (1972). As such, the authoritative construction of the Michigan non-domestic PPO statute on March 4, 2019 means that the state may undertake prior restraint as it applies to social media, i.e. Facebook, postings. Plaintiff here alleges that such a statute authorizing the same is unconstitutional under the First Amendment. He also asserts that the ability to enter an *ex parte* PPO in the manner authoritative constructed also violates his rights to sufficient procedural due process under the Fourteenth Amendment.

## II.      BACKGROUND ON KEVIN LINDKE

Plaintiff Kevin Lindke is the proud father of a minor daughter, "OGL." **First Am Compl, ECF No. 10, ¶5.** Tina Troy is the aunt of the mother of OGL. *Id., ¶6.* In other words, Tina Troy is the maternal great-aunt of OGL. *Id.* Plaintiff and OGL's mother have had a heated and contested child custody battle. *Id., ¶7.* At the heart of the matter, it is the belief and verifiable fact that members of OGL's family have let OGL come into regular contact with a twice-convicted sex offender. *Id., ¶8.* Because of the highly contested custody battle, Tina Troy would take it upon herself to search out Facebook

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

posts about OGL's mother (and that side of the family) listed on a Facebook page known as "Justice for O[GL]." *Id., ¶9.*

The "Justice for O[GL]" Facebook page features political and opinion commentary about the actions of the family of OGL's mother and also protests, debates, and communicates about the failures of OGL's maternal family as well as complicit local judicial and governmental officials in failing to use legal authority to prevent "a twice convicted violent sexual predator" from having "ongoing access to" OGL. *Id., ¶10.* The Facebook group has over 2,000 voluntary members. *Id., ¶12.*

On March 4, 2019, Tina Troy filed an *ex parte* petition for issuance of a personal protection order (PPO) pursuant Michigan law, MCL 600.2950a, against Plaintiff solely premised on alleged speech made solely via Facebook. *Id., ¶13.* While the petition filed by Tina Troy does not allege any form of harm or threat of harm, an *ex parte* PPO was issued pursuant to the Michigan non-domestic PPO statute, MCL 600.2950a, and enjoined Plaintiff from speaking online about Tina Troy. **Order, ECF No. 10-3, PageID# 242, ¶5 "Other".** It was done without any *pre*-deprivation hearing. *Id.* **(top of page); First Am Compl, ECF No. 10, ¶17.** Those acts prohibited include "posting comments about Petitioner on social media" and "posting message through the use of any medium of communication... pursuant to MCR

6

750.411s." This is referred to as the "March 4, 2019 Order." There is no appeal of right of said order under the statute and there was no pre-deprivation notice or opportunity to be heard required by the statute as authoritatively construed. Further, the Michigan non-domestic PPO statute provides no methodology or remedy for the irreparable harm caused by the unconstitutional prior restraint, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), or means to correct the LEIN entry in violation of sufficient constitutional due process.

By this federal action, Plaintiff challenges the constitutionality of the Michigan non-domestic PPO statute as authoritatively construed, see *Skinner v Switzer*, 131 S. Ct. 1289 (2011). **First Am Compl, ECF No. 10, ¶18.** Plaintiff Lindke wants to, intends to, and desires to make further statements and posts (i.e. speech) about Tina Troy and her (and her family's) involvement with allowing OGL to come into regular contact with a twice-convicted sex offender, and discuss the involvement and failures of legal officers to protect OGL on the "Justice for O[GL]" Facebook page, but fears to do so or even attempt to do so (i.e. is chilled) due to the Michigan non-domestic PPO statute. *Id.,* **¶19;** see also **Exhibit A.**

# ARGUMENT

## I.    WHO HAS BEEN SUED?

Throughout, attorney Shoudy has presented himself as counsel for "Judge Lane."[3] **Appearance, ECF No. 6, PageID# 204.**However, it is important to understand, as a threshold matter, who is the _actual_ Defendant. Defendant is sued in an _official_ capacity. Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." _Kentucky v. Graham_, 473 U.S. 159, 166 (1985); see also _Lewis v. Clarke_, 581 U.S. __; 137 S. Ct. 1285, 1291-1292 (2017) (same). "It is _not_ a suit against the official _personally. Graham, supra,_ at 166. As such, judicial, qualified, and absolute immunity are not available to this defendant. _Graham, supra_, at 167; see also _Crowe & Dunlevy, P.C. v. Stidham_, 640 F.3d 1140, 1156 (10th Cir. 2011). All that can be raised is _sovereign_ immunity. However, there is no sovereign immunity existing under law when the relief sought is prospective injunctive relief against an official in their official capacity. _Frew v Hawkins_, 540 U.S. 431, 437 (2004). Moreover, when a statute is unconstitutional, "the courts must sustain the supreme law of the land by

---

[3] Hereinafter, the entity sued will be referred to as "Defendant" and any reference to Cynthia A. Lane personally will be referred to as "Judge Lane."

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

declaring the statute unconstitutional and void." *Minnesota v. Barber*, 136 U.S. 313, 319 (1890).

### a.   EXHAUSTION OF STATE REMEDIES IS NOT REQUIRED

Throughout the motion/brief to dismiss, Defendant suggests that the proper process is to simply go to back to state court and for Plaintiff seek a *prospective*-only state court level remedy from Judge Lane for the alleged unconstitutional statute. E.g. **Mt. to Dismiss, ECF No. 11, PageID #410** ("Plaintiff should be required to complete the pending hearing on his motion to terminate the PPO in the underlying civil action and obtain a ruling on the motion."). There are two problems with that assertion.

*First*, assuming Judge Lane would grant such a motion, it does not resolve the unconstitutionality of the Michigan non-domestic PPO statute as construed to have authorized the current (and future) prior restraint in the first place. Even if there were voluntary cessation of the unconstitutionality by a PPO termination order, this does not apply retroactively and does not moot the jurisdiction of this case. *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior

9

could not reasonably be expected to recur."). Defendant here is not Judge Lane. Instead, the actual Defendant has a "heavy" burden and fails to meet the same by this motion by failing to prove non-reoccurrence. *Id.*

*Second*, Defendant is asserting, but does not realize it, that because Plaintiff allegedly has a state level remedy it should or could be first exhausted. Binding precedent does not require the exhaustion of state level remedies before coming to federal court. There is no exhaustion-of-remedies requirement or precondition to § 1983 claims. *Kanuszewski v. Mich. Dep't. H.H.S.*, 927 F.3d 396, 409 fn.5 (2019) (citing *Monroe v. Pape*, 365 U.S. 167, 183 (1961)). The federal remedy under § 1983 is "supplementary" to any state remedies, and "the latter need not be first sought and refused before the federal one is invoked." *Monroe, supra*, at 183. To the extent that Plaintiff has a state court remedy (which he disputes), it is irrelevant to the analysis.

## II.    *ROOKER-FELDMAN* DOCTRINE IS NOT A BAR

For the first argument against this Court providing a federal remedy, Defendant argues that the *Rooker-Feldman* doctrine bars the suit. Defendant is wrong.  A party who lost in state court may not seek and cannot overturn a state court judgment via a second federal lawsuit in the district court. This

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

doctrine, named from the two cases[4] it derives, provides that a federal district court does not have jurisdiction to review a state court judgment, even when a federal court § 1983 complaint alleges that the state court judgment violates the plaintiff's federal constitutional rights.

Federal trial courts have struggled to articulate the proper contours of the *Rooker-Feldman* doctrine. This resulted in the Supreme Court issuing two decisions which further clarified how "narrow", *Lance v. Dennis*, 546 U.S. 459, 464 (2006), the doctrine really is: *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) and *Skinner v. Switzer*, 131 S. Ct. 1289 (2011). The doctrine applies narrowly because it runs counter to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

 As missed by Defendant, for the doctrine to apply, the party seeking relief in federal court must be expressly asking the federal court to "reverse or modify" a state court final[5] judgment. *Adkins v. Rumsfeld*, 464 F.3d 456,

---

[4] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

[5] Defendant also claims that "the *Rooker-Feldman* doctrine applies equally to interlocutory orders as well as final judgments" citing *Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 461 fn.2 (6th Cir. 2003). *Exxon* overruled that conclusion. The *Rooker-Feldman* doctrine bars jurisdiction "only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court *after the state proceedings ended*, complaining of an injury caused by the state-court judgment and seeking review and rejection of that

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

464 (4th Cir. 2006). Moreover, if a plaintiff is attacking the constitutionality of the underlying rules and statutes which authorize the relief provided by a judgment, then *Rooker-Feldman* also does not apply. *Skinner, supra*, at 1297-1298.

"The pertinent inquiry after *Exxon* is the "source of the injury" the plaintiff <u>*alleges in the federal complaint*</u>. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). The inexplicitly intertwined standard has been overturned. *Id.* In *Skinner,* the Supreme Court confirmed that *Rooker-Feldman* does not bar federal district court challenges to "a statute or rule <u>*governing*</u> [a lower court] decision," even if "the same or a related question was earlier aired between the parties in state court." *Skinner, supra*, at 1297-1298 (quoting *Exxon, supra*, at 292-293). As the Sixth Circuit recounts the technical difference—

> Appellate review — the type of judicial action barred by *Rooker-Feldman* — consists of a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting

---

judgment.'" *Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 23-24 (1st Cir. 2005) (quoting *Exxon, supra*, at 291). That portion of *Pieper* is no longer good law after *Exxon*. As will be discussed, there is a question as to whether an *ex parte* PPO is a judgment or an interlocutory order.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.

*Coles v. Granville*, 448 F.3d 853, 858-859 (6th Cir. 2006) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)).

Here, undisputedly, the source of the injury being sought to be challenged is the Michigan non-domestic PPO statute *itself*. **First Am. Compl., ECF No. 10, ¶¶18, 28-29.** The Supreme Court has confirmed that when a party is attacking a statute as "authoritatively construed," *Rooker-Feldman* is again no bar. *Skinner, supra*, at 1298. That is *exactly* what Plaintiff has pled. See **First Am. Compl., ECF No. 10, ¶¶20-49.**[6]

But even if this Court were to conclude that this is an attack on Judge Lane's PPO itself, invocation of *Rooker-Feldman* still fails for lack of a "judgment." Query: was the *ex parte* PPO issued by Judge Lane a "judgment"

---

[6] The only possible avenue of escape for Defendant (i.e. remember the Defendant is not Judge Lane personally) is to concede that Judge Lane expressly violated the First Amendment by issuing the March 4, 2019 PPO against Kevin Lindke. Nowhere in the briefing has it made such an assertion or concession. And because Michigan judges are presumed to know the law, it must be concluded and only logical that the Michigan PPO statute, as authoritatively construed, authorizes prior restraint as the statute is formally understood. Plaintiff is attacking *the statute* that authorizes the same. Judge Lane's decision is not being attacked; the law underlying it is being challenged. *Skinner* permits this. Whether compliance with this Court's judgment (in favor of Plaintiff) would make it impossible to comport with Judge Lane's decision is irrelevant. *Coles, supra, at* 858-859.

Defendant cites only one unpublished, non-binding trial level decision, *Browning v. Worthy*, 2015 U.S. Dist. LEXIS 74068, to support the idea that a Michigan trial court decision is not an "authoritatively construction" of a state statute. This is completely illogical. In light of *Skinner*, *Browning*, a prisoner pro per case, is clearly decided erroneously and has not been adopted by any other court since.

as that term is understood for *Rooker-Feldman* purposes? *Exxon* and later the Sixth Circuit are clear—the alleged injury must "emerge from the state court *judgment*." *Alexander v. Rosen*, 804 F.3d 1203, 1206 (6th Cir. 2015) (emphasis in original); see also *Exxon, supra*, at 291. Here, Plaintiff argues that the *ex parte* PPO is not a judgment at all. There is no appeal available from an issued *ex parte* personal protection "order." *See* MCR 3.709(B). No statute or order expressly deems such an order as a final "judgment." In fact, a party can, within fourteen days of service of an *ex parte* PPO seek to have it modified or terminated (going forward) rending such an order nonfinal or at any time thereafter with a showing of good cause. MCR 3.707(A)(1)(a)-(b). The respondent to such a petition for an *ex parte* PPO is never consulted or provided notice or the opportunity to be heard if such an order is granted. Moreover, it is also temporary—albeit a long period. MCR 3.705(A)(3). As such, a Michigan non-domestic ex parte PPO has *none* of the hallmarks of a traditional "judgment" as required by *Exxon*, as a threshold requirement, for *Rooker-Feldman* to be invocable.

Given all this, *Rooker-Feldman* is no bar to these claims.

## III. THE *YOUNGER* ABSTENTION DOCTRINE IS NOT A BAR

The *Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of a singular type of state proceeding:

pending criminal prosecutions. *Younger v. Harris*, 401 U.S. 37, 44 (1971). The doctrine only applies as to federal cases being asked "*to enjoin* pending state proceedings." *Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019); see also *Ohio Civil Rights Comm'n v. Dayton Christian Schs, Inc.*, 477 U.S. 619 (1986)(Per *Younger*, "a federal court should *not enjoin* a pending state criminal proceeding except in the very unusual situation that an injunction is necessary to prevent great and immediate irreputable injury"). This Court has held the same. *Moore v. Johnson*, No. 14-11903, 2014 U.S. Dist. LEXIS 70951(E.D. Mich., May 23, 2014). Plaintiff is _not_ asking for such relief; he is, instead, asking this Court to rule on the challenged constitutionality of the Michigan non-domestic PPO statute. As such, the *Younger* abstention doctrine does not apply on its face.[7] The critical distinction is clearly expressed starting at page 881 in *Marks v. Stinson*, 19 F.3d 873 (3rd Cir. 1994). This Court is requested to adopt that precedent. A copy is the decision is attached as **Exhibit B**.

Along that same lines, Defendant makes the clumsy mistake of assuming when some sort of state court proceeding in the same general area of law is underway, federal courts must exit the ballfield. The Supreme

---

[7] The *Younger* doctrine is a multi-faceted test. Defendant simply made a conclusion and failed to address these various parts. As such, it has waived the argument for purposes of this motion

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Court has *expressly* confirmed this is just not true—the general pendency of an action in a state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction. *Sprint Communications, Inc. v. Jacob*s, 134 S. Ct. 584, 588 (2013) (quoting *Colorado River*, *supra*, at 817). Instead—

> federal courts ordinarily *should* entertain and resolve on the merits an action within the scope of a jurisdictional grant, and *should not refuse* to decide a case in deference to the States.

*Id.*

But even if this Court disagrees, the *Younger* abstention doctrine is a complicated and multi-facet test to narrow its applicability, which was not addressed by Defendant.

*First*, *Younger* only applies to certain "narrow" and limited types of cases: criminal prosecutions and also narrow additional proceedings like civil enforcement proceedings and certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions (i.e. civil contempt). *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"). These "define *Younger*'s scope." *Sprint, supra*, at 591.

*Second*, if the proceeding is found to fit into one of the three *NOPSI* categories listed above, the court then must further evaluate the proceeding

using a three-part test laid out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). The *Middlesex* test states that abstention may occur when three criteria are met: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims.

 *Third*, even if abstention is warranted after *Middlesex*, a plaintiff still has the opportunity to show that an exception to *Younger* applies. These exceptions include bad faith, harassment, or flagrant unconstitutionality of the statute or rule at issue. *Fieger v. Thomas*, 74 F.3d 740, 750 (6th Cir. 1996).

### i. Defendant has waived the argument.

 Because this is a multi-part test with exceptions, Defendant has the burden to adequately brief all three parts of the doctrine. It has miserably failed. It addressed none of the applicable law and none of the three steps. Defendant simply made a conclusion and failed to address these various parts. As such, it has waived the argument for purposes of this motion. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 283 fn.6 (6th Cir. 2018). The Court is requested to so rule and decline to entertain the argument. Anything less is unfair to Plaintiff for not being able to directly

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

respond to specific arguments. Notwithstanding, Plaintiff points out a few of failings and why *Younger* does not apply

### ii.    None of the three *NOPSI* categories are in play.

Under the first part of the test, this lawsuit, as narrowly pled, does not fit within any of the three case-types under *NOPSI*. Read carefully, Plaintiff is vigilantly only challenging the Michigan non-domestic PPO statute as authoritatively construed, not seeking to halt a pending criminal[8] case proceeding or that something akin to a criminal case. The theories are that the Michigan non-domestic PPO statute violates the First Amendment as a form of prior restraint and allows for the general issuance of non-emergency PPOs without sufficient procedural due process as authoritatively construed. Neither fits under *NOPSI.*

Moreover, this federal challenge in this case cannot be seeking to invalidate or halt any contempt-based proceedings pending in the state court. This is because in Michigan even incorrect orders must be obeyed. *In re Dudzinski*, 257 Mich. App. 96, 111 (2003) (willful violation of the trial court's order, *regardless of its legal correctness*, still warranted the trial court's finding of criminal contempt). So, a decision about the

---

[8] The issuance of PPOs is a civil, not criminal, matter. MCR 3.703(A) ("A personal protection action is an independent cause of action commenced by filing a petition with a court."); MCR 2.101(A) ("There is one form of action known as a civil action.")

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

constitutionality of the Michigan non-domestic PPO statute does not affect the outcome of a proceeding involving a finding of contempt before the Michigan courts for violations of court orders.[9]

### b.   The *Middlesex* factors fail.

But even assuming this Court were to find that this case is challenging one of the three *NOPSI* categories, Defendant would need to show that the three *Middlesex* factors apply to successfully invoke *Younger*. Again, Defendant has failed to argue that these are met; the argument is forfeited. Notwithstanding, the *Middlesex* factors cannot be met by Defendant in this case. But before applying the *Middlesex* factors, we must make sure we understand the nature of the PPO process.

The challenge to this case is the Michigan non-domestic PPO statute to have permitted the entry of the March 4, 2019 PPO in the first instance. Under Michigan law, even assuming that Plaintiff were to be successful in a pending motion for to terminate or modify the PPO for any reason, such relief is only and solely *prospective* in effect from the date *forward* after a second order is issued granting such a motion. The Michigan non-domestic PPO

---

[9] However, a ruling on the constitutionality of the Michigan non-domestic PPO statute will, if issued, correctly limit the number of new PPOs and prevent the wrongful allegation or conviction of contempt on those PPOs. Especially because Plaintiff intends to repeat the actions, in the future, that caused the March 4, 2019 Order to be issued in this first place. **First Am Compl, ECF No. 10, ¶19.**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

statute has no process to legally nullify or vacate a prior entered PPO or prevent from being entered in the first place. Instead, indefinitely, the record of the PPO is on the enjoined respondent's permanent government record—whether correctly or incorrectly issued. *Lipscombe v. Lipscombe*, unpublished decision of the Court of Appeals, issued Feb 4, 2010 (Docket No. 287822) ("there is no statutory provision to address removal [of a PPO] from the LEIN"). So even if the state court were to terminate the PPO today, Plaintiff suffers concrete and ongoing constitutional harm as he has a permanent mark against his good name and reputation on his official government records which always remaining. As such and for that period between issuance of the March 4, 2019 PPO and the hypothetical future termination of the PPO, state level proceedings will not provide the federal plaintiff with any, let alone adequate, opportunity to raise (or remedy) his constitutional harm being suffered before future prospective termination. Defendant is wrong when it asserts that "Plaintiff's arguments can all be raised in the underlying action." There is no means to remedy the wrong in the window before the hypothetical future termination of the PPO. That permanent entry into LEIN chills Plaintiff's speech to avoid the black mark on his record. Yet, any loss of First Amendment freedoms, for even minimal

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

periods of time, constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

### i.      *Procedural Due Process Claim*

The Michigan non-domestic PPO statute provides no actual or adequate opportunity to raise a challenge to the denial of sufficient procedural due process. See MCL 600.2950a. As such, clearly the third *Middlesex* factor fails.

### ii.      *Prior Restraint Claim*

As for the prior restraint claim, none of the *Middlesex* factors can be met. There is no pending state proceeding about the constitutionality of the Michigan non-domestic PPO statute for that period on and after March 4, 2019 to whenever, if ever, it is prospectively terminated or expires. Second, the current proceedings do not involve an important state interest as continuation of unconstitutional statutes can never be a valid state interest. Lastly, the current proceedings do not provide an actual or alternately adequate opportunity to raise his constitutional claims about the unconstitutionality of the Michigan non-domestic PPO statute authorizing the entry of the March 4, 2019 Order while Defendant seems to be implicitly asserting that the March 4, 2019 Order is validly done under the Michigan

non-domestic PPO statute as construed. As such, abstention under *Younger* again fails.

### c.    The statute is flagrantly unconstitutional

Lastly, the *Younger* doctrine does not apply due to the statute being flagrantly unconstitutional under *Fieger.* The statute both authorizes prior restraint and no pre-deprivation notice or opportunity to be heard. *McGlone, supra*, at 733; *Zinermon, supra*, at 125. The case comes to this court with the presumption of unconstitutionality. *Bantam Books*, *supra*, at 70. As such, the flagrantly unconstitutional exception applies.

## IV.   *MONELL* IS NOT IMPLICATED IN AN OFFICIAL CAPACITY SUIT

State sovereign immunity generally bars actions against states from proceeding in federal court, including against state officials sued in their official capacities for damages. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018). However, state sovereign immunity via the Eleventh Amendment is subject to a few exceptions, one of which is the doctrine first announced in *Ex parte Young*, 209 U.S. 123 (1908). The Sixth Circuit has explained.

- Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law, *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 & n. 10 (1989).

- This is regardless of whether compliance might have an ancillary effect on the state treasury, *Edelman v. Jordan*, 415 U.S. 651, 667-68 (1974).

22

- "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 fn.14 (1983) (citing *Ex parte Young*).

*Puckett v. Lexington-Fayette Urban County Govt.*, 833 F.3d 590, 598 (6th Cir. 2016). Moreover, "the courts must sustain the supreme law of the land by declaring the statute unconstitutional and void." *Barber*, *supra*, at 319. Thusly, under *Ex parte Young* and *Barber*, private plaintiffs can sue state officials in their *official capacity* to enforce federal laws and regulations, but only for prospective injunctive and declaratory relief against unconstitutional statutes. See *Price v. Medicaid Director*, 838 F.3d 739, 746-747 (6th Cir. 2016).

Oddly, however, Defendant argues "Plaintiff must allege and prove the existence of a policy or custom [i.e. the *Monell* standard] of violating individual's rights that was the moving force behind the alleged violation of his constitutional rights." However, *Monell* only applies to <u>municipal</u> defendants, not state defendants. E.g. *Baker v. Indiana Family & Social Services Admin.*, 260 F. Supp. 2d 731, 737 fn.6 (S.D. Ind. 2003) (citing *Monell*, *supra*, at 691 fn.54). A Michigan state court judge is believed to be a state officer. If, however, Defendant is asserting and conceding to being a

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

*county* office, then sovereign immunity from money damages claims as a *state* office no longer applies. Invoking *Monell* is meritless.

## V. ATTORNEY FEES AND COSTS ARE A FORM OF RELIEF, NOT A FAILURE TO STATE CLAIM.

An award of attorney fees under § 1988 is a form of relief, not a cause of action, and should not be challenged under Rule 12(b)(6) for failing to state a *claim*. FRCP 12(b)(6). This is the wrong methodology to seek such relief. Additionally, movant's counsel is still confused about whom he represents. His client, the Defendant, is essentially a state office or an arm of the state government, not Judge Lane personally. Attorney fees under § 1988 are a type of *court costs*, not damages. These are due to Plaintiff notwithstanding sovereign immunity. *Hutto v. Finney*, 437 U.S. 678 (1978) (attorney fees are permissible under the Eleventh Amendment when paid from state treasuries to successful plaintiffs in civil rights actions pursuant to 42 U.S.C. § 1988). As such, a successful case will require payment of attorneys from the state office sued in this matter.

Section § 1988(b) authorizes attorney fees "against a judicial officer *for an act or omission taken in such officer's judicial capacity*" is not liable for such costs unless such action was clearly in excess of such officer's jurisdiction." But again, two points. *First*, this lawsuit is not seeking to challenge "an act or omission taken" by Judge Lane "in her judicial capacity."

24

Instead, it is directly challenging the constitutionality of the Michigan non-domestic PPO statute. *Second*, again, the Defendant here is not "a judicial *officer*" but rather a governmental office. *Lewis, supra*, at 1291-1292. While relief could have been brought against Judge Lane in her personal capacity and be subject to this limitation, this case is brought as an *official* capacity case only and is essentially a case against a state office. Winning this case will require *the state,* not Judge Lane, to pay any awardable attorney fees and costs under Section 1988(b). As such, the Section 1988(b) limitation is simply not applicable given the way the case has been structured and pled.

## RELIEF REQUESTED

WHEREFORE, the Court is requested to deny Defendant's motion to dismiss and instead direct it to answer the complaint forthwith.

Date: September 5, 2019                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: September 5, 2019                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison_____
OUTSIDE LEGAL COUNSEL PLC
BY PHILIP L. ELLISON (P74117)
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Plaintiff