# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN LINDKE,
    Plaintiff,

    v.

CYNTHIA A. LANE
in her official capacity, and

    and

TIMOTHY DONNELLON,
in his official capacity,
    Defendants

_____/

Case No.: 19-cv-11905
Honorable Mathew F. Leitman

**SECOND AMENDED
COMPLAINT**

OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

FLETCHER FEALKO SHOUDY &
FRANCIS PC
TODD J. SHOUDY (P41895)
Attorney for Defendant Lane
1411 3rd St, Ste F
Port Huron, MI 48060
(810) 987-8444
(810) 987-8149 – fax
tshoudy@fletcherfealko.com

## SECOND AMENDED COMPLAINT

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

# TABLE OF CONTENTS

INTRODUCTION .......................................................... 1

PARTIES .................................................................... 1

ABOUT *EX PARTE YOUNG* CASES AGAINST
 JUDGES IN THEIR OFFICIAL CAPACITY ................................ 4

ABOUT CASES AGAINST SHERIFFS IN THEIR
OFFICIAL CAPACITY EFFECTUATING JUDICIAL ORDERS ................... 5

JURISDICTION ............................................................ 6

GENERAL ALLEGATIONS ................................................. 7

COUNT I - FIRST AMENDMENT PRIOR
RESTRAINT AS A VIOLATIVE *SIVILLI* "GAG ORDER" ........................ 12

COUNT II - FIRST AMENDMENT PRIOR RESTRAINT
"AS AUTHORITATIVELY CONSTRUED" THEORY
UNDER *SKINNER* ....................................................... 15

COUNT III - DEPRIVATION OF PROCEDURAL
DUE PROCESS "AS AUTHORITATIVELY CONSTRUED"
THEORY UNDER *SKINNER* ............................................... 23

DOCUMENTS .............................................................. 28

CONCLUSION ............................................................. 31

RELIEF REQUESTED ...................................................... 31

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## INTRODUCTION

NOW COMES Plaintiff KEVIN LINDKE, by and through counsel, and complains as follows:

## PARTIES

1.      Plaintiff KEVIN LINDKE is a resident of St. Clair County.

2.      Defendant CYNTHIA A. LANE is a state court judge *solely* sued in her *official* capacity and this suit is seeking declaratory relief (or injunctive relief if declaratory relief is not available) and not monetary damages.

3.      "When a state court judge is sued in his [or her] official capacity, the suit is essentially against the state." *Muhammad v. Paruk*, 553 F. Supp. 2d 893 (E.D. Mich. 2008).

4.      "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); see also *Alkire v. Irving*, 330 F.3d 802, 810-811 (6th Cir. 2003) ("as a result of being sued only in their official capacities, Sheriff Zimmerly and Judge Irving cannot claim any personal immunities, such as quasi-judicial or qualified immunity, to which they might be entitled if sued in their individual or personal capacities").

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

5.      Defendant TIMOTHY DONNELLON is the Sheriff of the St. Clair County and is sued in his *official* capacity and this suit is seeking declaratory and prospective injunctive relief and not monetary damages.

6.      As a suit against defendants in their official capacities, this "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" they serve. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

7.      Defendants are not sued in any personal capacity.

8.      Federal law (42 U.S.C. § 1983) directs that <u>every person</u> who, <u>under color of any statute</u>, ordinance, regulation, <u>custom</u>, or <u>usage</u>, <u>of any State</u> or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, <u>shall be liable</u> to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

9.    In accordance with *Ex Parte Young*, state sovereign immunity does not stand in the way of a lawsuit against a public official "actively involved with administering" the alleged violation of the US Constitution. *Doe v. DeWine*, 910 F.3d 842, 849 (6th Cir. 2018) (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015)).

10.    The Eleventh Amendment "does not preclude actions against state officials sued in their official capacities for prospective injunctive or declaratory relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993).

11.    This Eleventh Amendment exception permits a federal court to "compel[] a state official to comply with federal law." *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 417 (6th Cir. 2019) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & fn.10 (1989)).

12.    To the extent that Defendants suggests there is an exhaustion-of-remedies requirement to § 1983 claims, U.S. Supreme Court precedent has expressly rejected that assertion. *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 409 (6th Cir. 2019) (citing and quoting *Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("The federal remedy [under § 1983] is supplementary to [any] state remed[ies], and the latter need not be first sought and refused before the federal one is invoked.")).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## ABOUT *EX PARTE YOUNG* CASES AGAINST JUDGES IN THEIR OFFICIAL CAPACITY

13.    "[A] judge *can* be sued in an official capacity, and injunctive relief *can* be granted, when the judge violates a declaratory decree or when declaratory relief is unavailable. Necessarily then, §1983 also contemplates declaratory relief." *Dixon v. City of St. Louis*, Case No. 19-cv-0112, 2019 WL 2437026 (E.D. Mo. 2019)

14.    Consistent with this statutory scheme, courts have found that declaratory relief may be awarded against judicial defendants named in their official capacity. See, e.g., *Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016) ("[T]he plain language of § 1983 contemplates a declaratory judgment against judicial officers."); see also *McNeil v. Community Probation Servs., LLC*, CA6 Case No. 19-5262, 945 F.3d 991 (6th Cir. 2019) (recognizing that constitutionally harmed parties may "sue[] the judges, if not immune themselves, for their part in carrying out the alleged harm.").

15.    Defendant CYNTHIA A. LANE is sued in her official capacity both as an enforcer of either an unconstitutional prior restraint (gag) order or the unconstitutional Michigan nondomestic PPO statute as authoritatively construed. See *Georgevich v. Strauss*, 772 F.2d 1078, 1087-1088 (3rd Cir. 1985); *Nichols v. Sivilli*, No. 14-cv-3821 (WJM), 2014 U.S. Dist. LEXIS 175391, 2014 WL 7332020 (D.N.J. Dec. 19, 2014).

16.   "Where a suit challenges 'statutes related to the judicial process or statutes previously enforced by the particular judge against the plaintiff,' judges are proper parties." *Georgevich v. Strauss*, 772 F.2d 1078, 1088 (3rd Cir. 1985).

## ABOUT CASES AGAINST SHERIFFS IN THEIR OFFICIAL CAPACITY EFFECTUATING JUDICIAL ORDERS

17.   On December 23, 2019, the Sixth Circuit explained sovereign immunity does not stand in the way of a lawsuit against a public official "actively involved with administering" the alleged violation, even if it derives from a state judicial order. *McNeil v. Community Probation Servs., LLC*, CA6 Case No. 19-5262, 945 F.3d 991 (6th Cir. 2019) (pagination not yet set).

18.   The Sixth Circuit in *McNeil* also confirms that an injunction against an official who *implements* a constitutional violation caused by another official is also allowed  *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) and *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 958-59, 966 (6th Cir. 2013) (permitting *Ex parte Young* suit against state actors at three levels of allegedly unlawful action).

19.   This suit, via the Second Amended Complaint, is not adding Attorney General Dana Nessel notwithstanding the *sua sponte* comments this Court made during a telephonic conference held on December 19, 2019; however, the issues complained of are not ones *caused* or *implemented* by

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

the Office of Attorney General as it did not initiate and does not initiate any known process to cause prior restraint or initiate any process for personal protection orders under the Michigan nondomestic PPO statute against Plaintiff KEVIN LINDKE. See *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) ("general authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law"); see also *McNeil v. Community Probation Servs., LLC*, 945 F.3d 991, (6th Cir. 2019) ("*Ex parte Young* more often gets plaintiffs in trouble for suing an official too far removed from implementing a policy than for selecting an official too intimately involved in its execution. That's because *Ex parte Young* permits only lawsuits that can be meaningfully described as being against the named official, not those that 'merely mak[e] him a party as a representative of the state, and thereby attempt[] to make the state a party.'").

## JURISDICTION

20.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act.

21.    Venue is proper in this judicial district.

## GENERAL ALLEGATIONS

22.    Plaintiff KEVIN LINDKE is the father of a young daughter referred to herein as "OGL," a minor child.

23.    Tina Troy is the aunt of the mother of OGL. In other words, Tina Troy is the maternal great-aunt of OGL.

24.    Plaintiff KEVIN LINDKE and OGL's mother have had a heated and contested child custody battle.

25.    At the heart of the matter, it is the belief and verifiable fact that members of OGL's family has let OGL come into regular contact with a twice-convicted sex offender.

26.    Because of the highly contested custody battle, Tina Troy would take it upon herself to search out Facebook posts about OGL's mother (and that side of the family) listed on a Facebook page formerly known as "Justice for O[GL]" and is now known as "Through My Eyes" (hereinafter "JFO/TME").

27.    The JFO/TME Facebook page features political and opinion commentary about the actions of the family of OGL's mother and also protests, debates, and communicates about the failures of OGL's maternal family as well as complicit governmental officials in failing to use legal authority to prevent "a twice convicted violent sexual predator" from having

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

"ongoing access to" OGL. See https://www.facebook
.com/groups/2845344492357419/

28.    This is an example:



29.    This Facebook group has over 3,000 voluntary members. See

https://www.facebook.com/groups/2845344492357419/members/

30.    On March 4, 2019, Tina Troy filed an *ex parte* petition for

issuance of a personal protection order (PPO) pursuant Michigan law, MCL

600.2950a, against Plaintiff KEVIN LINDKE solely premised on speech

made solely via Facebook.

31.    On March 4, 2019, Defendant CYNTHIA A. LANE[1] issued an *ex parte* order premised on Tina Troy's an *ex parte* petition for issuance of a personal protection order (PPO) under the Michigan non-domestic PPO statute.

32.    Said order included a provision which expressly prohibited Plaintiff KEVIN LINDKE from "posting comments about [Tina Troy] on social media" [hereinafter the "Social Media Injunction"].

33.    The Social Media Injunction was recorded into and became enforceable, by arrest via entry into the Law Enforcement Information Network ("L.E.I.N.") as entered and made effective by Defendant TIMOTHY DONNELLON.[2] See MCL 600.2950a(17).

34.    The speech prohibited by the Social Media Injunction does not fall under the exceptions to the First Amendment's long-standing prohibition on prohibiting speech.

35.    The Social Media Injunction fails the applicable standard of constitutional review (i.e. strict scrutiny) and unconstitutionally restrained

---

[1] All references to "Defendant CYNTHIA A. LANE" means against her in her *official* capacity—a specialized status under Section 1983 law.

[2] To the extent that Defendant TIMOTHY DONNELLON would argue that he was merely following an order of the St. Clair County Circuit Court, an alleged violation may involve two actors and the potential immunity of one does not necessarily free the other from suit. *McNeil v. Community Probation Servs., LLC*, CA6 Case No. 19-5262, 945 F.3d 991 (6th Cir. 2019) (pagination not yet set).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Plaintiff KEVIN LINDKE's right to speech under the First Amendment of the United States Constitution.

36.     There is either no appeal or an inadequate appeal from the *ex parte* issuance of the Social Media Injunction upon its *ex parte* issuance.

37.     Plaintiff KEVIN LINDKE was jailed on warrants issued premised solely on the Social Media Injunction.

38.     There have been other instances of using a prior-restraint based social media injunctions by this judicial office in the St Clair County Circuit Court (even when there are different sitting judges). See **Exhibits M, N, and O**.

39.     This lawsuit as commenced on June 26, 2019.

40.     On October 28, 2019, the St Clair County Circuit Court issued an opinion and order vacating, in substantial part, the prior issued personal protection order issued against and upon Plaintiff KEVIN LINDKE.

41.     The opinion and order provided no legal remedy for the time period of March 4, 2019 to October 29, 2019 when the St Clair County Circuit Court deprived him, *ex parte*, of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights.

42.     However, the October 28 decision curiously *did not* address whether the March 4, 2019 PPO was issued in violation of the First

Amendment, was unconstitutional for failing to provide due process, or otherwise confirmed that the authoritative construction of the Michigan non-domestic PPO statute was rendered in error.

43.     Unconstitutional use of Michigan non-domestic PPO statute in a manner to cause a prior restraint is an authoritative construction due to more than one judge in St Clair County undertaking the same in the same court.

44.     Plaintiff KEVIN LINDKE wants to, intends to, and desires to make constitutionally-protected statements and posts (i.e. speech) about Tina Troy, her and her family's involvement with allowing OGL to come into regular contact with a twice-convicted sex offender, and discuss the involvement and failures of legal officers to protect OGL on the JFO/TME Facebook page, but fears to do so due to the prior restraints entered against him as described above.

45.     Moreover, on information and belief, a permanent record of the issuance of the Social Media Injunction was entered and remains entered into (and can never be removed from) the Law Enforcement Information Network ("L.E.I.N."), and is accessible by law enforcement officers across the State of Michigan at any time. See *JH v. JPH*, 2020 Mich. App. LEXIS 249, at *4 (Ct App, Jan. 14, 2020) (a [Michigan] PPO is entered into the Law Enforcement Information Network (LEIN), and there is no statutory provision

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

11

providing its removal after the PPO expires."); *Gupton v. Johnston*, 2010 Mich. App. LEXIS 205, at \*3-4 (Mich. Ct. App., Jan. 28, 2010) ("if respondent had obtained a hearing and succeeded, the only relief would have been a law enforcement agency inputting the relevant information (modification, termination, etc.) into the LEIN, not  the actual removal of the PPO from the system").

46.    Because an "injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights," *Org for a Better Austin v Keefe*, 402 U.S. 415, 418-419 (1971), "the usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages." *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. 1990) (quoting *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (DC Cir. 1987)); *Metro Opera Ass'n, Inc. v. Local 100, Hotel Emps & Rest Emps. Int'l Union*, 239 F.3d 172, 177 (2nd Cir. 2001) (collecting cases); see also *American Malting Co. v. Keitel*, 209 F. 351, 354 (2nd Cir. 1913) ("Equity will not restrain by injunction the threatened publication of a libel, as such, however great the injury to property may be. This is the universal rule in the United States.").

## COUNT I - FIRST AMENDMENT PRIOR
## RESTRAINT AS A VIOLATIVE *SIVILLI* "GAG ORDER"

47.    The prior allegations are alleged word for word herein.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

48.   Count I asserts a theory whereby Plaintiff KEVIN LINDKE alleges that the issuance of the Social Media Injunction does not involve the interpretation and enforcement of a Michigan statute—a First Amendment wrong recognized by *Nichols v. Sivilli*, No. 14-cv-3821 (WJM), 2014 U.S. Dist. LEXIS 175391, 2014 WL 7332020 (D.N.J. Dec. 19, 2014).

49.   A prior restraint is any law or order forbidding certain communications when issued in advance of the time that such communications are to occur. *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012).

50.   The Social Media Injunction comes to this Court "with a heavy presumption" of unconstitutionality under the First Amendment. *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963); *TM v. MZ*, 926 NW.2d 900, 911 (Mich. Ct. App. 2018).

51.   Courts, too, are bound by the First Amendment. *Citizens United v. F.E.C.*, 558 U.S. 310, 326 (2010).

52.   Defendant CYNTHIA A. LANE drafted the terms of the Social Media Injunction.

53.   Because Defendant CYNTHIA A. LANE is responsible for enforcing her self-drafted the Social Media Injunction, her relationship to the Social Media Injunction is not merely adjudicative.

13

54.   This count for declaratory and/or alternative injunctive relief seeks to redress deprivation of Plaintiff KEVIN LINDKE's constitutional rights via a challenge to the constitutionality of the gag orders issued by the St Clair County Circuit Court; Plaintiff KEVIN LINDKE is not seeking money damages but is seeking costs and attorney fees pursuant to 42 USC § 1988.

55.   Because the Michigan non-domestic PPO statute does not authorize the entry of a prior restraint, the Michigan Legislature did not have any role in the enactment or creation of the Social Media Injunction but rather by the unconstitutional acts of Defendant CYNTHIA A. LANE.

56.   Defendant TIMOTHY DONNELLON further effectuated the unconstitutional Social Media Injunction via and into the Law Enforcement Information Network ("L.E.I.N.") and criminalized First Amendment protected speech.

57.   Defendant TIMOTHY DONNELLON failed to halt or failed to terminate the effectuation of the unconstitutional Social Media Injunction and instead, contrary to the protections of the First Amendment, did enter into the Law Enforcement Information Network ("L.E.I.N.") the Social Media Injunction and thereby criminalized First Amendment protected speech.

58.   The Social Media Injunction violates the First Amendment to the United States Constitution as impermissible prior restraint upon Plaintiff

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

KEVIN LINDKE by Defendants TIMOTHY DONNELLON and Defendant CYNTHIA A. LANE.

### COUNT II - FIRST AMENDMENT PRIOR RESTRAINT "AS AUTHORITATIVELY CONSTRUED" THEORY UNDER *SKINNER*

59.     The prior allegations are alleged word for word herein.

60.     Count II alternatively asserts a theory whereby the Michigan non-domestic PPO statute is not silent and instead statutory authorizes, as authoritatively construed (see e.g. **Exhibits C and M**) the issuance of general prior restraint gag orders based upon the *Skinner* "authoritative construction" principle.

61.     Under this state statute, a petitioner who is not a spouse, former spouse, individual with child in common, individual in dating relationship, or person residing or having resided in same household can seek an order of a Michigan circuit court enjoining another from certain acts including entering onto premises, threatening to sexually assault, kill, or physically injure petitioner or a named individual, and other such acts or activities See MCL 600.2950a(3).

62.     Under Michigan law, before such a PPO can enjoin a respondent, "the [trial] court must make a positive finding of prohibited behavior by the respondent before issuing a PPO." *Kampf v. Kampf*, 237 Mich. App. 377, 386 (1999).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

63.     While the petition filed by Tina Troy does not allege any form of physical harm, an *ex parte* PPO enjoined Plaintiff KEVIN LINDKE from undertaking certain acts, given the authoritative construing of the Michigan non-domestic PPO statute, without any *pre*-deprivation hearing.

64.     While the petition filed by Tina Troy does not allege any form of economic harm, an *ex parte* PPO enjoined Plaintiff KEVIN LINDKE from undertaking certain acts, given the authoritative construing of the Michigan non-domestic PPO statute, contrary to the long-standing principle that equity will not enjoin libel due to the protections of the First Amendment.

65.     This count for declaratory and/or alternative injunctive relief seeks to redress deprivation of Plaintiff KEVIN LINDKE's constitutional rights via a challenge to the constitutionality of the Michigan non-domestic PPO statute as authoritatively construed, see *Skinner v Switzer*, 131 S. Ct. 1289 (2011); Plaintiff KEVIN LINDKE is not seeking money damages but is seeking costs and attorney fees pursuant to 42 USC § 1988.

66.     The First and Fourteenth Amendments to the United States Constitution establish Plaintiff's rights to freedom of speech and expression.

67.     The Michigan non-domestic PPO statute incorporates the standards under MCL 750.411h, MCL 750.411i, and MCL 750.411s.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

68.    MCL 750.411h and MCL 750.411i both expressly exempts "constitutionally protected activity" from its coverage.

69.    MCL 750.411s expressly "does not prohibit constitutionally protected speech or activity." MCL 750.411s(6).

70.    In Michigan, a trial court judge is resumed to know the law, *People v. Garfield*, 166 Mich. App. 66, 79 (1988), including that  Michigan non-domestic PPO statute cannot enjoin constitutionally protected speech, MCL 750.411s(6); MCL 750.411h(1)(c); MCL 750.411i(1)(d).

71.    Despite this, Plaintiff KEVIN LINDKE has been enjoined via the Social Media Injunction vis-à-vis by the Michigan non-domestic PPO statute as authoritatively construed.[3]

72.    A certified copy of the "March 4, 2019 PPO" containing the Social Media Injunction, as an example, is attached hereto as **Exhibit C**.

73.    Thusly, the Michigan non-domestic PPO statute has been authoritatively construed to mean "posting comments about petitioner [Tina Troy] on social media" is not constitutionally protected speech or activity.

---

[3] A certified copy of the "March 4, 2019 PPO" containing the Social Media Injunction is attached hereto as **Exhibit C**.

74.   Therefore, the Michigan non-domestic PPO statute *permits* the entry of the Social Media Injunction as the Michigan non-domestic PPO has been authoritatively construed.

75.   Other individuals within St Clair County has been enjoined by the St Clair County Circuit Court from conducting speech via Facebook in a similar manner by the Michigan non-domestic PPO statute as authoritatively construed.

76.   By the way the Michigan non-domestic PPO statute has been authoritatively construed, Michigan non-domestic PPO statute permitted the unlawful entry of restraints on First Amendment protected speech despite being illegal "prior restraint" under the First Amendment of the United States Constitution.

77.   Plaintiff KEVIN LINDKE is not attacking or challenging the Social Media Injunction itself but instead seeks declaratory and/or injunction relief by targeting as unconstitutional the Michigan non-domestic PPO statute as it has been authoritatively construed and may be attacked as explained and authorized by *Skinner v Switzer*, 131 S. Ct. 1289 (2011).

78.   As authoritatively construed, the Michigan non-domestic PPO statute unlawfully and unconstitutionally permits the enjoinment of constitutionally protected speech, on an *ex parte* basis, in violation of the

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

First Amendment when prohibiting Plaintiff KEVIN LINDKE from posting comments about petitioner [Tina Troy] on social media.

79.    By the Michigan non-domestic PPO statute having been construed in manner done, the Michigan non-domestic PPO statute has caused Plaintiff KEVIN LINDKE to be unable to speak online and/or via Facebook to the followers of his social media campaign regarding his own daughter "OGL" as it regards Tina Troy and her legal campaign.

80.    The Michigan non-domestic PPO statute does not permit the vacation of the Social Media Injunction in full or to immediately challenge the entry of an ex parte PPO before an appellate court, but rather only to thereafter to file a post-final order motion to terminate the _continued_ future legal effectiveness of such prior restraint upon individuals like Plaintiff KEVIN LINDKE who have been imposed with such prior restraint without notice or the opportunity to be heard.

81.    The Michigan non-domestic PPO statute, as authoritatively construed, is a law existing and being utilized, as effectuated on March 4, 2019 pursuant to that authoritative construction, in violation of the First Amendment to the United States Constitution.

82.    Injury in the form of four (4) possible contempts of court was being sought against Plaintiff KEVIN LINDKE by non-party Tina Troy based

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

on the existence of the Michigan non-domestic PPO statute as it has been authoritatively construed.

83.    Even when an ex parte PPO order is terminated for future effectiveness as provided by MCR 3.707(A)(1)(a), the Michigan non-domestic PPO statute still imposes punishment (and thereby causes a chill on free speech) for the receivers of a PPO containing prior restraint.

84.    A permanent record of the issuance of a PPO, whether lawfully issued or not, is entered into (and never removed from) the Law Enforcement Information Network ("L.E.I.N."), and is accessible by law enforcement officers across the State of Michigan at any time.

85.    In response to the four "motions" for contempt, four bench warrants for the arrest of Plaintiff KEVIN LINDKE solely for exercising his First Amendment rights to speak (without being subject to any prior restraint) due to the existence of the Michigan non-domestic PPO statute as authoritatively construed.[4]

86.    Upon notice of the bench warrants, Plaintiff KEVIN LINDKE voluntarily surrendered himself.

---

[4] To be clear however, this Count is not challenging any aspect of the contempt proceedings but rather solely the constitutionality of the Michigan non-domestic PPO statute itself. A plaintiff in a federal civil rights action is not required to exhaust any provided state remedies before seeking relief in federal court. *Patsy v. Bd. of Regents of the State of Florida*, 457 U.S. 496 (1982).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

87.   Plaintiff KEVIN LINDKE was required to post a total of $45,000 in cash in order to be released pending resolution of the contempt proceedings solely premised on the unconstitutional Michigan non-domestic PPO statute as authoritatively construed.

88.   Having no other choice, Plaintiff KEVIN LINDKE posted the $45,000 which is an extreme personal and financial hardship.

89.   Having no other real or immediate remedy at law from the state courts from having the unconstitutional Michigan non-domestic PPO statute (as authoritatively construed) from being sought against him once again for the same conduct and Plaintiff KEVIN LINDKE's want, intentions, and desire to make constitutionally-protected statements and posts (i.e. speech) about Tina Troy, her and her family's involvement with allowing OGL to come into regular contact with a twice-convicted sex offender, and discuss the involvement and failures of legal officers to protect OGL on the "Justice for O[GL]" Facebook page, this federal lawsuit now follows.

90.   "It has long been established that a prior restraint" from state action "comes to a court 'with a heavy presumption *against* its constitutional validity.'" *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 224 (6th Cir. 1996), opinion clarified (May 8, 1996) (quoting *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963)).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

91.   The Michigan non-domestic PPO statute, as authoritatively construed, is patently unconstitutional as a form of prior restraint against constitutionally protected speech.

92.   The Michigan non-domestic PPO statute as authoritatively construed and thereby has, is, and will continue to deprive Plaintiff KEVIN LINDKE of his First Amendment rights to freedom of speech and expression.

93.   Such action repeatedly violates the First Amendment to the United States Constitution.

94.   Each day of prior restraint on speech constituted separate and cognizable infringement of the First Amendment, *Nebraska Press Assn.*, 423 U.S. 1327, 1329 (1975), with any loss of First Amendment freedoms, for even minimal periods of time, constituted irreparable harm, *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

95.   Defendant CYNTHIA A. LANE entered the Social Media Injunction so as to give it legal effect via the authoritative construction of the non-domestic Michigan PPO statute.

96.   Defendant TIMOTHY DONNELLON further effectuated the unconstitutional Social Media Injunction (from the authoritative construction of the non-domestic Michigan PPO statute) via and into the Law Enforcement

Information Network ("L.E.I.N.") and criminalized First Amendment protected speech.

97.     Defendant TIMOTHY DONNELLON failed to halt or failed to terminate the effectuation of the unconstitutional Social Media Injunction (from the authoritative construction of the non-domestic Michigan PPO statute) and instead, contrary to the protections of the First Amendment, did enter into the Law Enforcement Information Network ("L.E.I.N.") the Social Media Injunction and thereby criminalized First Amendment protected speech.

98.     The Social Media Injunction, via the authoritative construction of the non-domestic Michigan PPO statute, violates the First Amendment to the United States Constitution as impermissible prior restraint upon Plaintiff KEVIN LINDKE by Defendants TIMOTHY DONNELLON and Defendant CYNTHIA A. LANE.

## COUNT III - DEPRIVATION OF PROCEDURAL DUE PROCESS "AS AUTHORITATIVELY CONSTRUED" THEORY UNDER *SKINNER*

99.     The prior allegations are alleged word for word herein.

100.   The minimum requirements of due process under the Fourteenth Amendment includes written notice, the opportunity to be heard in person, and to present evidence <u>prior</u> to any deprivation of rights, with the exception

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

for emergency circumstances for which an immediate post-deprivation process must be provided.

101.  A party may maintain a procedural due process § 1983 claim in federal court if he alleges and proves that there was a constitutional violation under color of law and

a.   the state did not have a remedy; or

b.   the state had a remedy but it was deemed inadequate; or

c.   the state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy. *Hann v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

### *The State did not have a remedy*

102.  When non-party Tina Troy filed an *ex parte* petition for issuance of a personal protection order (PPO) pursuant Michigan law, Defendants TIMOTHY DONNELLON and Defendant CYNTHIA A. LANE acted on the comprehension that the Michigan non-domestic PPO statute as authoritatively construed[5] did not require or provide Plaintiff KEVIN LINDKE

---

[5] See *IME v DBS*, 857 N.W.2d 667 (Mich. App. 2014). Similarly, in *Kampf*, the Michigan Court of Appeals found that there is no procedural process violation under a similar the Michigan *domestic* PPO statute. See *Kampf v Kampf*, 603 N.W.2d 295, 299 (Mich. App. 1999). The decision is nothing more than a summary decision as it does not cite, follow, or analyze under the US Supreme Court's test via weighed the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

with any prior written notice or the opportunity to be heard, as authorized by the Michigan non-domestic PPO statute, when depriving him of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights.

103.  When non-party Tina Troy filed an *ex parte* petition for issuance of a personal protection order (PPO) pursuant Michigan law, no emergency situation existed to warrant the constitutional waiver of pre-deprivation written notice and the opportunity to be heard prior to depriving Plaintiff KEVIN LINDKE of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights.

104. Thereafter, Plaintiff KEVIN LINDKE was not provided any process or remedy prior to the actual deprivation of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights both facially and/or as applied.

105. Therefore, the Michigan non-domestic PPO statute, either facially or as applied, violates Plaintiff KEVIN LINDKE's constitutional right of procedural due process under the Fourteenth Amendment to the United States Constitution.

### *Alternatively, the State did not apply or misapplied its remedy*

106.  In the alternative, the existence of the post-deprivation remedies in non-emergency situations are not being reasonable applied or otherwise misapplied.

107. When undertaking *ex parte* deprivation of Plaintiff KEVIN LINDKE, the Michigan non-domestic PPO statute only requires a scheduled hearing within 14 days of entry of an *ex parte* PPO and yet does not require a timely *decision* to a challenge to the issuance of an *ex parte* PPO.

108.  By then allowing the petitioner of the *ex parte* PPO to go first and not timely complete his or her presentation, hearings on the requested challenge to issued *ex parte* PPO are extended to an unreasonable amount of time and thereby unreasonably delays a *decision* to a challenge to an *ex parte* PPO all the while an *ex parte* PPO respondent like Plaintiff KEVIN LINDKE is deprived of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights. See *Johnson v. Morales*, CA6 Case No. 17-2519, __ F.3d __ (6th Cir. 2020) (for due process, courts "measure the extent of the private interest from the time of the suspension to the time a decision has been reached in the post-suspension proceeding").

109.  This has resulted in no immediate or reasonably timely method challenging an unconstitutional *ex parte* PPO issued pursuant to the Michigan non-domestic PPO statute.

### *Alternatively, the State has a remedy but it is inadequate*

110. Even when the *ex parte* PPO is effectively challenged and determined that is was improperly issued, an *ex parte* PPO respondent

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

suffers from the impingement on his or her good name and reputation as the law enforcement agency that receives a true copy of an *ex parte* PPO—rightfully or wrongfully rendered—enters the same, without requiring proof of service, into L.E.I.N.

111.   Once in L.E.I.N., the issuance of the ex parte PPO remains listed in L.E.I.N. permanently, regardless of the rightful or wrongful issuance of the *ex parte* PPO.

112.   As such, even the post-deprivation remedy of terminating an improperly issued *ex parte* PPO inadequately leaves a permanent scarlet letter on the permanent record(s) involving Plaintiff KEVIN LINDKE when an *ex parte* PPO is issued and an *ex parte* PPO respondent has no opportunity to prevent the same from being entered with pre-deprivation notice and a hearing.

113.   While an improperly issued *ex parte* PPO may be listed as "terminated" in the L.E.I.N. system, the initially issuance of that the ex parte PPO remains etched in L.E.I.N. forever, see MCL 600.2950a(19)(b) and (20).

### *Due process is violated*

114.   Under any or all of the three theories listed above, the procedural safeguards employed under the Michigan non-domestic PPO statute are

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

insufficient to pass constitutional muster required by procedural due process under the Fourteenth Amendment to the United States Constitution.

115.   Defendant TIMOTHY DONNELLON further effectuated the lack of due process by entering the *ex parte* PPO into the Law Enforcement Information Network ("L.E.I.N.") in the absence of sufficient procedural due process.

116.   Defendant TIMOTHY DONNELLON failed to halt or failed to terminate the effectuation of the unconstitutional *ex parte* PPO in the absence of sufficient procedural due process. and instead, contrary to the protections of the Due Process Clause of the Fourteenth Amendment, did enter into the Law Enforcement Information Network ("L.E.I.N.") the *ex parte* PPO and thereby permanently entered a permeant and unlawful mark on the official governmental records of Plaintiff KEVIN LINDKE.

117.   The *ex parte* PPO against Plaintiff KEVIN LINDKE, facially and as applied, violates the Fourteenth Amendment to the United States Constitution.

**DOCUMENTS**

118.   Attached as **Exhibit A** is a copy of the Petition filed by Tina Troy to seek a Personal Protection Order pursuant to MCL 600.2950a.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

119.  Attached as **Exhibit B** is a certified copy of the Register of Actions in the matter of *Troy v Lindke.*

120.  Attached as **Exhibit C** is a certified copy of the March 4, 2019 PPO, which contains the Social Media Injunction.

121.  Attached as **Exhibit D** is the first of four motions seeking to hold Plaintiff KEVIN LINDKE in contempt of court solely due to his constitutionally protected speech, which also contains the Bench Warrant for the arrest of Plaintiff KEVIN LINDKE for exercising his constitutionally protected speech.

122.  Attached as **Exhibit E** is the second of four motions seeking to hold Plaintiff KEVIN LINDKE in contempt of court solely due to his constitutionally protected speech, which also contains the Bench Warrant for the arrest of Plaintiff KEVIN LINDKE for exercising his constitutionally protected speech.

123.  Attached as **Exhibit F** is the third of four motions seeking to hold Plaintiff KEVIN LINDKE in contempt of court solely due to his constitutionally protected speech, which also contains the Bench Warrant for the arrest of Plaintiff KEVIN LINDKE for exercising his constitutionally protected speech.

124.  Attached as **Exhibit G** is a copy of a transcript of the arraignment hearing in which a total full cash bond of $45,000 was required from Plaintiff KEVIN LINDKE.

125.   Attached as **Exhibit H** is Plaintiff KEVIN LINDKE's motion to terminate (i.e. vacate) the March 4, 2019 PPO on inter alia First Amendment grounds.

126.   Attached as **Exhibit I** is the fourth of four motions seeking to hold Plaintiff KEVIN LINDKE in contempt of court solely due to his constitutionally protected speech, which also contains the Bench Warrant for the arrest of Plaintiff KEVIN LINDKE for exercising his constitutionally protected speech.

127.   Attached as **Exhibit J** is a *Temporary Restraining Order* issued by US District Court Judge Janet T. Neff of the Western District of Michigan similarly enjoining a state court judge for issuing injunctive orders in violation of the First Amendment as a form of prior restraint.

128.   Attached as **Exhibit K** is a copy of the published Michigan Court of Appeals decision in *TM v MZ*.

129.   Attached as **Exhibit L** is a copy of the Michigan non-domestic PPO statute, MCL 600.2950a, together with MCL 750.411h, MCL 750.411i, and MCL 750.411s.

130.   Attached as **Exhibit M** is an ex parte PPO issued by Judge Lane's Judicial Office on November 27, 2017 which enjoins respondent from "posting info about Petitioner on social media."

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

30

131. Attached as **Exhibit N** is an ex parte PPO issued by Judge Lane's Judicial Office on August 14, 2018 which enjoins that respondent from "referencing [that] Petitioner on social media, text, or internet."

132. Attached as **Exhibit O** is an ex parte PPO issued by Judge Lane's Judicial Office on February 12, 2018 which enjoins respondent from "referencing Petitioner on social media, text, or internet."

## CONCLUSION

133. Plaintiff KEVIN LINDKE has been deprived of his rights secured by the First and Fourteenth Amendments to the United States Constitution (to which he is entitled as a citizen of this Country) for which he seeks a remedy pursuant to federal law.

## RELIEF REQUESTED

134. WHEREFORE, Plaintiff KEVIN LINDKE respectfully requests this Court to award one or more of the following—

a. Issue a declaration that the Social Media Injunction is unconstitutional as creating illegal prior restraint of Plaintiff KEVIN LINDKE's First and Fourteenth Amendment freedoms of free speech and expression and Defendants violated Plaintiff KEVIN LINDKE's First and Fourteenth Amendment freedoms of free speech and expression;

31

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

b.   Issue a declaration that the Michigan non-domestic PPO statute, as authoritatively construed, is unconstitutional as creating illegal prior restraint of Plaintiff KEVIN LINDKE's First and Fourteenth Amendment freedoms of free speech and expression and Defendants violated Plaintiff KEVIN LINDKE's First and Fourteenth Amendment freedoms of free speech and expression;

c.   Issue a declaration the Michigan non-domestic PPO statute, as authoritatively construed and/or as applied, violates Plaintiff KEVIN LINDKE's procedural due process rights under the Fourteenth Amendment;

d.   To the extent not barred by federal law and/or to the extent that declaratory relief is unavailable, issue an injunction against one or both Defendants to enjoin any unconstitutional actions complained above and/or the Michigan non-domestic PPO statute, as authoritatively construed and/or as applied; and

e.    Award Plaintiff all applicable interest, costs, and attorney

fees pursuant to 42 U.S.C. § 1988.[6]

Date: January 30, 2020                RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

**ATTORNEY FOR PLAINTIFF**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[6] Again, as noted, all references to "Defendant CYNTHIA A. LANE" means against her in her *official* capacity and not in her *judicial* capacity. "Official capacity" suits are, "in <u>all respects</u> other than name, to be treated as a suit against the entity" they serve. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). An official-capacity suit "imposes liability <u>on the entity</u> that [s]he represents." *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985). In other words, this case is actually against the State of Michigan. "When a state court judge is sued in his [or her] official capacity, the suit is essentially against the state." *Muhammad v. Paruk*, 553 F. Supp. 2d 893 (E.D. Mich. 2008). "Congress undoubtedly intended… to authorize fee awards payable by the States when their officials are sued *in their official capacities*." *Hutton v Finney*, 437 U.S. 678, 693-694 (1978). "Hence the substantive protections of the Eleventh Amendment do not prevent an award of attorney's fees against [state] officers in their official capacities." *Id.* at 693.

33

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: January 30, 2020

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

**ATTORNEY FOR PLAINTIFF**

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com