UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LINDKE,

Plaintiff,

Case No. 19-cv-11905
Hon. Matthew F. Leitman

v.

HON. CYNTHIA A. LANE, *et al.*,

Defendants.

______________________________________________________________/

**ORDER DENYING PLAINTIFF'S MOTION TO CONSOLIDATE CASES (ECF No. 68)**

In this action, Plaintiff Kevin Lindke "challenges the constitutionality of the Michigan non-domestic [Personal Protection Order] statute," Mich. Comp. Laws 600.2950a, "as authoritatively construed" by Michigan Judge Cynthia A. Lane (the "Lane Action"). (Lindke Resp. to Mot. to Dismiss, ECF No. 30, PageID.2107.) Lindke has also filed a second action in in this Court in which he "challeng[es] the [constitutionality of] … the Michigan domestic [Personal Protection Order] statute," Mich. Comp. Laws § 600.2950, "as authoritatively construed" by Michigan Judge John Tomlinson (the "Tomlinson Action"). (Mot. to Consolidate, ECF No. 68, PageID.2659.) The Tomlinson Action is assigned to Judge Sean Cox. (*See id.*)

Lindke now asks this Court to consolidate the Lane Action and the Tomlinson action. (*See id.*) For the reasons explained below, the Court declines to do so and will **DENY** Lindke's motion to consolidate.

**I**

**A**

The Lane Action arises out of a dispute between Lindke and a woman named Tina Troy. (*See* Sec. Am. Compl. at ¶30, ECF No. 21, PageID.999.) Troy is the aunt of Lindke's daughter. (*See id.* at ¶23, PageID.998.) "On March 4, 2019, [] Troy filed an *ex parte* petition for the issuance of a personal protection order" against Lindke under Michigan's non-domestic personal protection order statute, Mich. Comp. Laws § 600.2950a. (*Id.*) In the petition, Troy claimed that Lindke had threatened and harassed her in messages he posted on Facebook. (*See id.*; *see also* Personal Protection Order Petition, ECF No. 21-1.)

The petition was assigned to Judge Lane in the St. Clair County Circuit Court. (*See* Sec. Am. Compl. at ¶31, ECF No. 21, PageID.1000.) On March 4, 2019, Judge Lane "issued an *ex parte* order premised on [] Troy's *ex parte* petition." (*Id.*) Among other things, the order "expressly prohibited [] Lindke from posting comments about [Troy] on social media." (*Id.* at ¶32, PageID.1000; internal quotation marks omitted). On October 28, 2019, Judge Lane amended and substantially limited the scope of her order to prohibit Lindke only from "posting defamatory statements about [Troy]

on social media and/or from publishing such statements elsewhere." (St. Ct. Order, ECF No. 29-2, PageID.1712.) The amended order provided that it would remain in effect until March 4, 2020. (*See* Personal Protection Order, ECF No. 21-3.)

**B**

On June 26, 2019, Lindke filed the Lane Action. (*See* Compl., ECF No. 1; Sec. Am. Compl., ECF No. 21.) That action was assigned to this Court. In the Lane Action, Lindke claims that Judge Lane's order prohibiting him from posting about Troy on social media "is unconstitutional." (Sec. Am. Compl. at ¶134(a), ECF No. 21, PageID.1022.) He therefore seeks a declaration that "the Michigan non-domestic [personal protection order] statute, as authoritatively construed [by Judge Lane], is unconstitutional as creating illegal prior restraint of [Lindke's] First and Fourteenth Amendment freedoms of free speech and expression." (*Id.* at ¶134(b), PageID.1023.)

**C**

With the Judge Lane Action pending in this Court, Lindke appealed the entry of Judge Lane's order to the Michigan Court of Appeals. (*See* Lindke St. Ct. Appeal Br., ECF No. 45-2.) In that appeal, Lindke argued that the Michigan non-domestic personal protection order statute "does not bar or remedy defamation." (*Id.*, PageID.2342.) He therefore insisted that Judge Lane "misused the [] statute" when she held that Lindke was prohibited from posting defamatory statements about Troy.

(*Id.*) In the alternative, Lindke argued that Judge Lane's amended order was an unconstitutional prior restraint on his right to free speech. (*See id.*, PageID.2343.)

The Michigan Court of Appeals agreed with Lindke that Judge Lane's order, as modified, was "much too broad and unconfined to the boundaries" set forth in Michigan law. *TT v. KL*, --- N.W.2d ---, 2020 WL 6370356, at *15 (Mich. Ct. App. Oct. 29, 2020). It then said that Judge Lane's order "neede[d] to be specifically limited to the adjudicated speech" – *i.e.*, the specific speech that Judge Lane found to be false and defamatory after an evidentiary hearing. *Id.* And it remanded the action back to Judge Lane with instructions to "further modif[y]" the personal protection order "consistent with [its] opinion" if that order "remain[ed] in effect" and had not expired. *Id.* and *id.* n.18.

Lindke believes that the Michigan Court of Appeals decision did not go far enough. He insists that the Court of Appeals erred when it concluded that, under some circumstances, "a petitioner [can] use the Michigan non-domestic [personal protection order] statute to enjoin a defamation." (Lindke Mich. Sup. Ct. App., ECF No. 64-1, PageID.2635.) He has filed an application for leave to appeal in the Michigan Supreme Court. (*See id.*) As of the date of this order, Lindke's application remains pending with the Michigan Supreme Court.

**D**

The Tomlinson Action arises out of a dispute between Lindke and his former girlfriend, Ani Moeller. Moeller is the mother of Lindke's daughter. (*See* First Am. Compl. in the Tomlinson Action at ¶21, ECF No. 69-4, PageID.2902.) In 2015, Moeller filed an *ex parte* petition in the St. Clair County Circuit Court seeking a domestic personal protection order pursuant to Mich. Comp. Laws § 600.2950. (*See* State Ct. Op. and Order, ECF No. 69-7, PageID.2940.) In that petition, Moeller alleged that Lindke physically abused her on several occasions. (*See id.*) Moeller also accused Lindke of stalking her, sending her threatening text messages, and "sen[ding] nude photos of her to her friends, family members, and all of the other employees at her place of employment." (*Id.*) Moeller was granted a personal protection order based on her petition, and that order expired on March 9, 2016. (*See id.*, PageID.2941.)

On March 31, 2016, Moeller filed an *ex parte* petition for a new personal protection order against Lindke. (*See id.*) In that petition, Moeller alleged that Lindke was "stalking [her] on social media." (*Id.*) She also accused Lindke of sending "threatening texts to [her] friends, [her] mother, and [her] brother." (*Id.*)

Moeller's 2016 petition was assigned to Judge Tomlinson. On March 31, 2016, Judge Tomlinson issued a personal protection order against Lindke. (*See id.*) Among other things, the order prohibited Lindke from "stalking" Moeller under

Mich. Comp. Laws §§ 750.411h and 750.411i. (March 31, 2006, St. Ct. Personal Protection Order, ECF No. 12-3 in *Lindke v. Tomlinson*, E.D. Mich. Case No. 20-cv-12857.) Lindke repeatedly violated that order, and Judge Tomlinson imprisoned Lindke for those violations on three occasions. (*See* State Ct. Op. and Order, ECF No. 69-7, PageID.2941-2942.)

On March 6, 2019, Moeller filed a motion in front of Judge Tomlinson arising out of Lindke's alleged additional violations of the March 2016 personal protection order. (*See id.*, PageID.2939.) Moeller accused Lindke of violating the personal protection order by (1) posting messages about her on social media and (2) "tagging" her on at least one of those posts, meaning that the communication was sent directly to her. (*Id.*)

Judge Tomlinson held an evidentiary hearing on Moeller's motion on September 13, 2019. (*See id.*) He then issued a written decision granting the motion in part and denying it in part. (*See id.*) He first rejected Lindke's argument that the personal protection order "should not have been issued because it constitute[d] a prior restraint on his right to [f]ree [s]peech." (*Id.*, PageID.2953.) Judge Tomlinson held that Lindke had "waive[d]" and "abandon[ed]" this argument. (*Id.*, PageID.2953-2954.) Judge Tomlinson then concluded that "[e]ven if [the argument was] not waived" it would have still "fail[ed] on the merits" because the personal protection order was "properly granted" and did not "create[] any limitation on

[Lindke's] ability to engage in constitutionally protected speech." (*Id.*, PageID.2954.) He explained that "[w]hile the [order] prohibits behavior that would constitute stalking [under Michigan law] … constitutionally protected activity is specifically excluded from the definition of harassment, which in turn is a necessary element to find that stalking has occurred." (*Id.*) Thus, "[t]he [order], as written, did not place a prior restraint on [Lindke's] constitutionally protected activity." (*Id.*)

Judge Tomlinson then moved to the question of whether Lindke had violated his order. (*See id.*) He observed that that issue was "not so easily resolved." (*Id.*) He separated the speech that allegedly violated his order into two categories: indirect speech (communications about Moeller but not directed to her) and direct speech (communication specifically directed to Moeller). He then acknowledged that "most of the [social media] posts" that Moeller had identified as violating the order "were not direct communications to [her]." (*Id.*, PageID.2956.) Instead, they were posts about Moeller and "discussing various aspects of [Moeller's] case." (*Id.*) He explained that with respect to those posts, "[g]iven the nature of the speech and the First Amendment" Moeller had the burden to "establish that the speech [in those posts] was not constitutionally protected" and that the speech in those posts violated his order (*Id.*) He had held that she failed to satisfy that burden, and he declined to impose any sanctions on Lindke for any of the indirect speech. (*See id.*)

Judge Tomlinson next moved to the one post where Lindke "tagged" Moeller. (*Id.*) He held that that post constituted a "direct communication to [Moeller]" because "when her contact information was typed into the post [by Lindke], she received a notification that the post had been made." (*Id.*) He concluded that "[t]aging [Moeller] in the post violated [Moeller's] constitutional right to be left alone, and [was] not constitutionally protected speech." (*Id.*; internal quotation marks omitted). He therefore held that "[b]ecause [that] speech [was] not constitutionally protected, it [was] a violation of the [personal protection order]." (*Id.*)

Judge Tomlinson ordered Lindke to appear on August 4, 2020, for sentencing on that violation. (*See id.*, PageID.2957.) Lindke did not appear for sentencing, and he appears to be a fugitive from justice. (*See* Register of Actions, ECF No. 69-6, PageID.2935-2937.)

**E**

While Lindke was apparently evading sentencing before Judge Tomlinson, he filed the Tomlinson Action in this Court on October 26, 2020. (*See* Compl. in Tomlinson Action, ECF No. 69-2; First Am. Compl. in Tomlinson Action, ECF No. 69-4.) The Tomlinson Action is assigned to Judge Sean Cox. (*See id.*) In the Tomlinson Action, Lindke seeks a declaration that "the Michigan domestic [personal protection order] statute, as authoritatively construed [by Judge Tomlinson], is

unconstitutional as it violates [Lindke's] First and Fourteenth Amendment freedoms of free speech and expression." (First. Am. Compl. in the Tomlinson Action, ECF No. 69-4 at ¶87(b), PageID.2915.)

**II**

On December 28, 2020, Lindke filed a motion to consolidate the Lane Action and the Tomlinson Action before the undersigned pursuant to Federal Rule of Civil Procedure 42. (*See* Mot. to Consolidate, ECF No. 68.) That rule provides that "[i]f actions before the court involve a common question of law or fact, the court may … consolidate the actions." Fed. Rule Civ. Proc. 42(a)(2). Under Rule 42(a), "[f]ederal district courts have very broad discretion in deciding whether or not to consolidate." *Frazier v. Garrison*, *I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993) (affirming denial of motion to consolidate). *See also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) (noting that district courts have "broad discretion to determine whether consolidation is appropriate"); *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987) ("[C]onsolidation is within the broad discretion of the district court"). "Whether cases present a common question of law or fact is only a threshold requirement; once a common question has been established, the decision to consolidate rests in the sound discretion of the district court." *Banacki v. OneWest Bank, FSB*, 276 F.R.D. 567, 571 (E.D. Mich. 2011).

"The party seeking consolidation bears the burden of demonstrating the commonality of law, facts or both in cases sought to be combined." *Gamboa v. Ford Motor Co.*, 381 F.Supp.3d 853, 866 (E.D. Mich. 2019). "Consolidation is not justified or required simply because the actions *include* a common question of fact or law. When cases involve *some* common issues but individual issues predominate, consolidation should be denied." *Id.* (emphasis in original; internal citations omitted). In deciding whether to consolidate cases, a court should consider, among other things:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993).

**III**

Lindke has not persuaded the Court that the Lane Action should be consolidated with the Tomlinson Action. While he has demonstrated that the actions share a common preliminary procedural question – whether the judges are sufficiently adverse to him so as to satisfy the case-or-controversy requirement of Article III – he has not established that the actions are otherwise sufficiently similar so as to warrant consolidation.

Lindke insists that the two actions should be consolidated because he is challenging "authoritative" statutory constructions by Judge Lane and by Judge Tomlinson that are very similar, if not essentially identical. (*See* Mot. to Consolidate, ECF No. 68, PageID.2659.) According to Lindke, both judges held that Michigan's domestic and non-domestic personal protection order statutes authorize a court to issue an order that restrains speech *about* an individual (as opposed to speech *to* an individual). (*See* Sec. Am. Compl. in Lane Action at ¶44, ECF No. 21, PageID.1002; First Am. Compl. in Tomlinson Action at ¶52, ECF No. 69-4, PageID.2908.) Lindke says that it makes sense to combine the actions because it will be more efficient for him to challenge the constitutionality of these parallel statutory constructions in one case.

But it is not that simple. As described above, Judge Lane's ruling has been superseded by the decision of the Michigan Court of Appeals. And that court's construction of Michigan's non-domestic personal protection order statute differs substantially from the "authoritative" construction by Judge Lane. Thus, it is not clear that Judge Lane's construction has any continuing relevance. Moreover, there is a serious dispute about whether Judge Tomlinson held that Michigan's domestic personal protection order statute authorizes a court to restrain speech about an individual. Indeed, Judge Tomlinson denies that he so construed the statute. (*See* Resp. to Mot. to Consolidate, ECF No. 69, PageID.2831.) And there is a reasonable

basis for that contention. As noted above, Judge Tomlinson held that Lindke waived his prior restraint challenge, and while Judge Tomlinson discussed the merits of that argument, that discussion may have been dicta. Moreover, Judge Tomlinson did not punish Lindke for any communications *about* Moeller. Instead, he punished Lindke only for a harassing communication sent directly *to* Moeller. Under all of these circumstances, there is a reasonable argument that Judge Tomlinson did not make any actual holding concerning whether Michigan's domestic personal protection order statute authorizes the prohibition of, or punishment for, speech *about* a person.[1] *See Wright v. Spaulding*, 939 F.3d 695, 701-02 (defining the essential elements of a holding). In sum, because it is not clear that Judge Lane's ruling remains intact as an "authoritative construction" of Michigan's non-domestic personal protection order statute and because it is not clear that Judge Tomlinson made any actual holding concerning whether Michigan's domestic personal protection order statute applies to communications about a person, it is not clear that the two actions now involve challenges to nearly identical statutory constructions.

---

[1] The Court recognizes that Lindke offers a competing view of Judge Tomlinson's ruling and that there is some support for that view in the text of Judge Tomlinson's ruling. This Court need not, and does not, resolve the dispute over the scope of Judge Tomlinson's ruling. For purposes of the motion for consolidation, it is enough to conclude, as the Court does, that there is room for reasonable disagreement over the scope of the ruling. The presence of this additional area of dispute serves to distinguish the Tomlinson Action from the Lane Action – and to weigh against consolidating the two cases. It will be up to Judge Cox to resolve the dispute over the scope of Judge Tomlinson's ruling.

Furthermore, the Lane Action involves significant procedural issues not present in the Tomlinson Action, and the presence of these issues weighs against consolidation. More specifically, there is a substantial and potentially difficult question in the Lane Action about whether Lindke's claims in that case are moot because the underlying personal protection order was largely vacated and has expired on its own terms. Moreover, if the Michigan Supreme Court hears Lindke's appeal and rules in his favor, that also could moot the issues raised in the Lane Action. The mootness issues unique to the Lane Action further persuade the Court that consolidation is not appropriate.

Finally, consolidation is not appropriate because Judge Tomlinson may have an additional potentially meritorious defense available to him that is not available to Judge Lane: the fugitive disentitlement doctrine. That doctrine "limits access to courts in the United States by a fugitive who has fled a criminal conviction in a court in the United States" where there is a "connection" or "nexus" between the two cases. *In re Prevot*, 59 F.3d 556, 562-67 (6th Cir. 1995). Judge Tomlinson has indicated that he intends to present this defense, and Lindke will likely mount a vigorous opposition to the defense.[2] The presence of this potentially significant fight

[2] Judge Lane (who is represented by the same attorney who represents Judge Tomlinson in the Tomlinson Action) identified this defense in her opposition to the motion to consolidate. Lindke did not file a reply brief in support of the motion and has not contested Judge Tomlinson's assertion that the Tomlinson Action will involve arguments over the fugitive disentitlement doctrine.

over the fugitive disentitlement doctrine in the Tomlinson Action weighs against consolidation.

**IV**

For all of the reasons stated above, Lindke's motion to consolidate (ECF No. 68) is **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 16, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 16, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764