# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KEVIN LINDKE,
     Plaintiff,

     v.

MAT KING,
in his official capacity; and

DALE KAYS,
in his official & personal capacities;

     and

TINA TROY,
in her official & personal capacities
     Defendants

_____/

Case No.: 19-cv-11905
Honorable Mathew F. Leitman

**COMPLAINT**

## THIRD AMENDED COMPLAINT

NOW COMES Plaintiff KEVIN LINDKE, by and through counsel, and complains as follows—

## PARTIES

1.    Plaintiff KEVIN LINDKE is a resident of St. Clair County.

2.    Defendant MAT KING is the Sheriff of the St. Clair County and is sued in his *official* capacity only.

3.    Defendant DALE KAYS is an employee with St. Clair County Central Dispatch and is sued in both his *official* and *personal* capacities and this suit is seeking declaratory and prospective injunctive relief both

capacities, and nominal damages of one dollar against him in his personal capacity only.

4.    Defendant TINA TROY is a resident of the State of Michigan and is pled to be subject to 42 U.S.C. § 1983 pursuant to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) and is seeking, as the maximum damages, only one dollar in nominal relief and declaratory relief.

## JURISDICTION

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act.

6.    Venue is proper in this judicial district.

## GENERAL ALLEGATIONS

7.    Plaintiff KEVIN LINDKE is the father of a daughter referred to herein as "OGL," a minor child.

8.    Defendant TINA TROY is the aunt of the mother of OGL. In other words, she is the maternal great-aunt of OGL.

9.    Plaintiff KEVIN LINDKE and OGL's mother have had a heated and contested child custody battle.

2

10.    At the heart of the matter, it is the belief and verifiable fact that members of OGL's family has let OGL come into regular contact with a twice-convicted sex offender.

11.    Because of the highly contested custody battle, Defendant TINA TROY would take it upon herself to search out Facebook posts about OGL's mother (and that side of the family) listed on a Facebook page formerly known as "Justice for O[GL]" and is now known as "Through My Eyes" (hereinafter "THROUGH MY EYES").

12.    The THROUGH MY EYES Facebook page features political and opinion commentary about inter alia the actions of the family of OGL's mother and also protests, debates, and communicates about the failures of OGL's maternal family as well as complicit governmental officials in failing to use legal authority to prevent "a twice convicted violent sexual predator" from having "ongoing access to" OGL. See https://www.facebook.com/groups/2845344492357419/

13.   This is an example:



14.   This Facebook group today has over 10,000 voluntary members.

See https://www.facebook.com/groups/2845344492357419/members/

15.   On March 4, 2019,[1] Defendant TINA TROY filed, with the assistance of agent(s) of the government, an *ex parte* petition for issuance of both an *ex parte* and also long-term personal protection order (PPO) pursuant to the Michigan non-domestic PPO statute, MCL 600.2950a, against Plaintiff KEVIN LINDKE solely premised on speech he made solely via Facebook.

---

[1] The statute of limitations has not run due to COVID-related tolling in the summer of 2020.

16.    On March 4, 2019, a Michigan judge issued an *ex parte* order as requested and commenced by Defendant TINA TROY's *ex parte* petition made and authorized under the Michigan non-domestic PPO statute.

17.    Said order, issued pursuant to the Michigan non-domestic PPO statute, included a provision which expressly prohibited Plaintiff KEVIN LINDKE from "posting comments *about* [Tina Troy] on social media" [hereinafter the "Social Media Injunction"] without first having a full and final adjudication on the merits when the proposed restraint involves speech.

18.    The Social Media Injunction was recorded into and became enforceable, by arrest, via entry into the Law Enforcement Information Network ("L.E.I.N.") by Defendant DALE KAYS who undertook this action himself as well as at the direction and command of Defendant MAT KING.[2] See MCL 600.2950a(17); **Exhibit P.**

19.    The actions of Defendant DALE KAYS and Defendant MAT KING furthered the effect of the unconstitutionality of the Michigan non-domestic PPO statute.

---

[2] To the extent that Defendants DALE KAYS and/or MAT KING would argue that he was merely following an order of the St. Clair County Circuit Court, an alleged violation may involve two actors and the potential immunity of one does not necessarily free the other from suit. See *McNeil v. Community Probation Servs., LLC*, 945 F.3d 991 (6th Cir. 2019).

20.    The government-selected speech prohibited *ex parte* by the Michigan non-domestic PPO statute does not fall under the exceptions to the First Amendment's long-standing prohibition on prohibiting speech.

21.    The Michigan non-domestic PPO statute fails the applicable standard of constitutional review (i.e. strict scrutiny) and unconstitutionally restrained Plaintiff KEVIN LINDKE's right to speech under the First Amendment of the United States Constitution.

22.    There is either no appeal or an inadequate appeal from the *ex parte* issuance of the Social Media Injunction (a prior restraint) upon its *ex parte* issuance as authorized by the Michigan non-domestic PPO statute.

23.    Plaintiff KEVIN LINDKE was jailed on warrants issued premised on *ex parte* orders issued pursuant to the Michigan non-domestic PPO statute.

24.    There have been other instances of using a prior-restraint by the judiciary in the St Clair County Circuit Court (even when there are different sitting judges) issued pursuant to the Michigan non-domestic PPO statute. See **Exhibits M, N, and O**.

25.    This lawsuit as commenced on June 26, 2019.

26.    On October 28, 2019, the St Clair County Circuit Court issued an opinion and order vacating, in substantial part, the prior issued *ex parte*

personal protection order issued against and upon Plaintiff KEVIN LINDKE in contradiction to both the First Amendment and Due Process.

27. The Michigan non-domestic PPO statute provides no legal remedy for the time period of March 4, 2019 to October 29, 2019 when the Michigan non-domestic PPO statute deprived him, *ex parte*, of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights.

28. Plaintiff KEVIN LINDKE wanted/wants to, intended/intends to, and desired/desires to make constitutionally-protected statements and posts (i.e. speech) about Defendant TINA TROY and her family's involvement with allowing OGL to come into regular contact with a twice-convicted sex offender, and discuss the involvement and failures of legal officers to protect OGL on the THROUGH MY EYES Facebook page, but fears to do so due to the prior restraints entered against him as described above and by the unknown threat of additional *ex parte* prior restraints being issued against him to be sought *ex parte* by Defendant TINA TROY.

29. Moreover, on information and belief, a long-term and/or permanent record of the issuance of the Social Media Injunction authorized by the Michigan non-domestic PPO statute was entered and remains entered into (and can never be removed from) the Law Enforcement Information Network ("L.E.I.N."), and is accessible by government officials

across the State of Michigan at any time. See *JH v. JPH*, 2020 Mich. App. LEXIS 249, at *4 (Ct App, Jan. 14, 2020) (a [Michigan] PPO is entered into the Law Enforcement Information Network (LEIN), and there is no statutory provision providing its removal after the PPO expires."); *Gupton v. Johnston*, 2010 Mich. App. LEXIS 205, at *3-4 (Mich. Ct. App., Jan. 28, 2010) ("if respondent had obtained a hearing and succeeded, the only relief would have been a law enforcement agency inputting the relevant information (modification, termination, etc.) into the LEIN, not the actual removal of the PPO from the system").

30.     Because an "injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights," *Org for a Better Austin v Keefe*, 402 U.S. 415, 418-419 (1971), "the usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages." *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. 1990) (quoting *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (DC Cir. 1987)); *Metro Opera Ass'n, Inc. v. Local 100, Hotel Emps & Rest Emps. Int'l Union*, 239 F.3d 172, 177 (2nd Cir. 2001) (collecting cases); see also *American Malting Co. v. Keitel*, 209 F. 351, 354 (2nd Cir. 1913) ("Equity will not restrain by injunction

the threatened publication of a libel, as such, however great the injury to property may be. This is the universal rule in the United States.").

31.    On appeal to the Michigan Court of Appeals, a three-judge panel agreed with Plaintiff KEVIN LINDKE that the Social Media Injunction, as amended, was "much too broad and unconfined to the boundaries" set forth in Michigan law.

32.    However, the Court of Appeals held, contrary to the First Amendment, that the Michigan non-domestic PPO statute authorizes enjoining defamatory communications when there is the satisfaction of the elements of MCL 750.411s.

33.    Plaintiff Lindke's speech about Defendant TINA TROY was not defamatory.[3]

34.    Such a construction of the Michigan non-domestic PPO statute renders the statute unconstitutional as a form of prior restraint and contrary to the First Amendment.

---

[3] While this allegation may not unsustainable against Defendant TINA TROY due to collateral estoppel, it is sustainable against Defendants King and Kays.

**COUNT I**
**DEPRIVATION OF PROCEDURAL DUE PROCESS**
**(AGAINST ALL DEFENDANTS)**

35.    The prior allegations are alleged word for word herein.

36.    The minimum requirements of due process under the Fourteenth Amendment includes written notice, the opportunity to be heard in person, and to present evidence <u>prior</u> to any deprivation of rights, with the exception for emergency circumstances for which an immediate post-deprivation process must be provided.

37.    A party may maintain a procedural due process § 1983 claim in federal court if he alleges and proves that there was a constitutional violation under color of law and—

a.    the state did not have a remedy; or

b.    the state had a remedy but it was deemed inadequate; or

c.    the state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy. *Hann v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

***The State did not have a remedy***

38.    When Defendant TINA TROY filed an *ex parte* petition for issuance of a personal protection order (PPO) pursuant Michigan law,

10

Defendants on the grounds that the Michigan non-domestic PPO statute did not require or provide Plaintiff KEVIN LINDKE with any prior written notice or the opportunity to be heard, as authorized by the Michigan non-domestic PPO statute, when depriving him of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights.[4]

39.    When Defendant TINA TROY filed an *ex parte* petition for issuance of a personal protection order (PPO) pursuant Michigan law, no emergency situation existed to warrant the constitutional preclusion of pre-deprivation written notice and the opportunity to be heard prior to depriving Plaintiff KEVIN LINDKE of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights.

40.    Thereafter, Plaintiff KEVIN LINDKE was not provided any process or final determination prior to the actual deprivation of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights both facially and/or as applied.

41.    Therefore, the Michigan non-domestic PPO statute, either facially or as applied, violates Plaintiff KEVIN LINDKE's constitutional right

---

[4] See *IME v DBS*, 857 N.W.2d 667 (Mich. App. 2014). Similarly, in *Kampf*, the Michigan Court of Appeals found that there is no procedural process violation under a similar the Michigan *domestic* PPO statute. See *Kampf v Kampf*, 603 N.W.2d 295, 299 (Mich. App. 1999). The decision is nothing more than a summary decision as it does not cite, follow, or analyze under the US Supreme Court's test via weighing the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

of procedural due process under the Fourteenth Amendment to the United States Constitution.

### *Alternatively, the State did not apply or misapplied its remedy*

42.    In the alternative, the existence of the post-deprivation remedies in non-emergency situations are not being reasonable applied or otherwise misapplied.

43.    When undertaking *ex parte* deprivation of Plaintiff KEVIN LINDKE, the Michigan non-domestic PPO statute only requires a scheduled hearing within 14 days of entry of an *ex parte* PPO and yet does not require a timely *decision* to a challenge to the issuance of an *ex parte* PPO.

44.    By then allowing the petitioner of the *ex parte* PPO to go first and not timely complete his or her presentation, hearings on the requested challenge to issued *ex parte* PPO are extended to an unreasonable amount of time and thereby unreasonably delays a *decision* to a challenge to an *ex parte* PPO all the while an *ex parte* PPO respondent like Plaintiff KEVIN LINDKE is deprived of his First, Second, Fourth, Fifth, and Fourteenth Amendments rights.

45.    This has resulted in no immediate or reasonably timely method challenging an unconstitutional *ex parte* PPO issued pursuant to the Michigan non-domestic PPO statute.

### *Alternatively, the State has a remedy but it is inadequate*

46.   Even when the *ex parte* PPO is effectively challenged and determined that it was improperly issued, an *ex parte* PPO respondent suffers from the impingement on his or her good name and reputation as the law enforcement agency (together with Defendants KAYS and KING) and that receives a true copy of an *ex parte* PPO—rightfully or wrongfully rendered—enters the same, without requiring proof of service, into L.E.I.N.

47.   Once in L.E.I.N., the issuance of the ex parte PPO remains listed in L.E.I.N. which can be acted upon by government officials without a warrant, regardless of the rightful or wrongful issuance of the *ex parte* PPO.

48.   As such, even the post-deprivation remedy of terminating an improperly issued *ex parte* PPO inadequately leaves a permanent scarlet letter on the permanent or long-term record(s) involving Plaintiff KEVIN LINDKE when an *ex parte* PPO is issued and an *ex parte* PPO respondent has no opportunity to prevent the same from being entered with pre-deprivation notice and a hearing.

49.   While an improperly issued *ex parte* PPO may be listed as "terminated" in the L.E.I.N. system, the initially issuance of that the ex parte PPO remains etched in L.E.I.N. long-term or seemingly forever, see MCL 600.2950a(19)(b) and (20).

13

### *Due process is violated*

50.    Under any or all of the three theories listed above, the procedural safeguards employed under the Michigan non-domestic PPO statute are insufficient to pass constitutional muster required by procedural due process under the Fourteenth Amendment to the United States Constitution.

51.    Defendants MAT KING and DALE KAYS further effectuated the lack of due process by entering the *ex parte* PPO into the Law Enforcement Information Network ("L.E.I.N.") in the absence of sufficient procedural due process.

52.    Defendants MAT KING and DALE KAYS failed to halt or failed to terminate the effectuation of the unconstitutional *ex parte* PPO in the absence of sufficient procedural due process. and instead, contrary to the protections of the Due Process Clause of the Fourteenth Amendment, did enter into the Law Enforcement Information Network ("L.E.I.N.") the *ex parte* PPO and thereby permanently entered a permanent and unlawful mark on the official governmental records of Plaintiff KEVIN LINDKE.

53.    The Michigan non-domestic PPO statute used against Plaintiff KEVIN LINDKE, facially and as applied, violates the Fourteenth Amendment to the United States Constitution.

## COUNT II
## PRIOR RESTRAINT (AFTER HEARING)
## (AGAINST DEFENDANT KAYS AND KING ONLY)

54.     The prior allegations are alleged word for word herein.

55.     The Michigan non-domestic PPO statute authorizes the issuance of general gag orders—an illegal form of prior restraint.

56.     Under the Michigan non-domestic PPO statute, a petitioner who is not a spouse, former spouse, individual with child in common, individual in dating relationship, or person residing or having resided in same household can seek an order of a Michigan circuit court enjoining another from certain acts including entering onto premises, threatening to sexually assault, kill, or physically injure petitioner or a named individual, and other such acts or activities See MCL 600.2950a(3).

57.     Under Michigan law, before such a PPO can enjoin a respondent, "the [trial] court must make a positive finding of prohibited behavior by the respondent before issuing a PPO." *Kampf v. Kampf*, 237 Mich. App. 377, 386 (1999).

58.     While the petition filed by Defendant TINA TROY does not allege any form of physical or economic harm, the Michigan non-domestic PPO statute authorizes the issuance of a PPO enjoining Plaintiff KEVIN LINDKE from undertaking certain acts, given the authoritative construing of the

Michigan non-domestic PPO statute, contrary to the long-standing principle against prior restraint.

59.    This count seeks to redress deprivation of Plaintiff KEVIN LINDKE's constitutional rights via a challenge to the constitutionality of the Michigan non-domestic PPO statute.

60.    The First and Fourteenth Amendments to the United States Constitution establish Plaintiff's rights to freedom of speech and expression.

61.    Despite this, Plaintiff KEVIN LINDKE has been enjoined by the Social Media Injunction vis-à-vis by the Michigan non-domestic PPO statute.

62.    A certified copy of the "March 4, 2019 PPO" containing the Social Media Injunction, as an example, is attached hereto as **Exhibit C**.

63.    Therefore, the Michigan non-domestic PPO statute *permits* the entry of an illegal form of prior restraint.

64.    Other individuals within St Clair County have been enjoined by the St Clair County Circuit Court from conducting speech via Facebook in a similar manner by the Michigan non-domestic PPO statute.

65.    The Michigan non-domestic PPO statute permitted the unlawful entry of restraints on protected speech despite being illegal "prior restraint" under the First Amendment of the United States Constitution.

66.    Plaintiff KEVIN LINDKE is not attacking or challenging the Social Media Injunction itself but instead seeks relief by targeting as unconstitutional the Michigan non-domestic PPO statute as it has been authoritatively construed and may be attacked as explained and authorized by *Skinner v Switzer*, 131 S. Ct. 1289 (2011).

67.    The Michigan non-domestic PPO statute unlawfully and unconstitutionally permits the enjoinment of constitutionally protected speech in violation of the First Amendment when prohibiting Plaintiff KEVIN LINDKE from posting comments *about* petitioner [Tina Troy] on social media.

68.    By the Michigan non-domestic PPO statute having been construed in manner done, the Michigan non-domestic PPO statute has caused Plaintiff KEVIN LINDKE to be unable to speak online and/or via Facebook to the followers of his social media campaign regarding his own daughter "OGL" as it regards Tina Troy and her legal campaign.

69.    The Michigan non-domestic PPO statute does not permit the vacation of the Social Media Injunction in full or to immediately challenge the entry of an *ex parte* PPO before an appellate court, but rather only to thereafter to file a post-final order motion to terminate the *continued* future legal effectiveness of such prior restraint upon individuals like Plaintiff KEVIN

LINDKE who have been imposed with such prior restraint without notice or the opportunity to be heard.

70.    The Michigan non-domestic PPO statute, as authoritatively construed, is a law existing and being utilized in violation of the First Amendment to the United States Constitution.

71.    Injury in the form of four (4) possible contempts of court was being sought against Plaintiff KEVIN LINDKE by Defendant TINA TROY based upon the existence of the Michigan non-domestic PPO statute.

72.    Even when an *ex parte* PPO order is terminated for future effectiveness as provided by MCR 3.707(A)(1)(a), the Michigan non-domestic PPO statute still imposes punishment (and thereby causes a chill on free speech) for the receivers of a PPO containing prior restraint.

73.    A permanent or unreasonably long-term record of the issuance of a PPO, whether lawfully issued or not, is entered into (and never removed from) the Law Enforcement Information Network ("L.E.I.N."), and is accessible by government officials across the State of Michigan at any time.

74.    In response to the four "motions" for contempt, four bench warrants for the arrest of Plaintiff KEVIN LINDKE solely for exercising his First Amendment rights to speak (without being subject to any prior restraint) due to the existence of the Michigan non-domestic PPO statute.

75.   Upon notice of the bench warrants, Plaintiff KEVIN LINDKE voluntarily surrendered himself.

76.   Plaintiff KEVIN LINDKE was required to post a total of $45,000 in cash in order to be released pending resolution of the contempt proceedings solely premised on the unconstitutional Michigan non-domestic PPO statute as authoritatively construed.

77.   Having no other choice, Plaintiff KEVIN LINDKE posted the $45,000 which is an extreme personal and financial hardship.

78.   Having no other real or immediate remedy at law from the state courts from having the unconstitutional Michigan non-domestic PPO statute (as authoritatively construed) from being sought against him once again for the same conduct and Plaintiff KEVIN LINDKE's want, intentions, and desires to make constitutionally-protected statements and posts (i.e. speech) about Tina Troy, her and her family's involvement with allowing OGL to come into regular contact with a twice-convicted sex offender, and discuss the involvement and failures of legal officers to protect OGL on the "Justice for O[GL]" Facebook page, this federal lawsuit now follows.

79.   "It has long been established that a prior restraint" from state action "comes to a court 'with a heavy presumption *against* its constitutional validity.'" *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 224 (6th

Cir. 1996), opinion clarified (May 8, 1996) (quoting *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963)).

80. The Michigan non-domestic PPO statute as authoritatively construed and thereby has, is, and will continue to deprive Plaintiff KEVIN LINDKE of his First Amendment rights to freedom of speech and expression.

81. Such action repeatedly violates the First Amendment to the United States Constitution.

82. Each day of prior restraint on speech constituted separate and cognizable infringement of the First Amendment, *Nebraska Press Assn.*, 423 U.S. 1327, 1329 (1975), with any loss of First Amendment freedoms, for even minimal periods of time, constituted irreparable harm, *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

83. Defendant TINA TROY is subject to Section 1983 responsibility to defend the constitutionality of the Michigan non-domestic PPO pursuant to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) and its progeny.

84. Defendant DALE KAYS is subject to Section 1983 responsibility in nominal damages and to defend the constitutionality of the Michigan non-domestic PPO as a public official/employee who entered the Social Media Injunction into the PPO system in furtherance of an unconstitutional statute.

85.    Defendant DALE KAYS did these acts by written agreement with Defendant MAT KING. See **Exhibit P.**

86.    Defendant MAT KING further effectuated the unconstitutional non-domestic Michigan PPO statute via and into the Law Enforcement Information Network ("L.E.I.N.") and criminalized First Amendment protected speech.

87.    Defendant MAT KING and/or Defendant DALE KAYS failed to halt or failed to terminate the effectuation of the unconstitutional non-domestic Michigan PPO statute and instead, contrary to the protections of the First Amendment, did enter into the Law Enforcement Information Network ("L.E.I.N.") the Social Media Injunction and which thereby criminalized First Amendment protected speech.

88.    Therefore, the non-domestic Michigan PPO statute effectuates violation(s) of the First Amendment to the United States Constitution as impermissible prior restraint upon Plaintiff KEVIN LINDKE by Defendants TINA TROY, MAT KING, and DALE KAYS, both individually and by joint conspiracy.

**COUNT III**
**PRIOR RESTRAINT BY *EX PARTE* ORDER**
**-PRIOR TO FIRST HEARING-**
**(AGAINST ALL DEFENDANTS)**

89.   The prior allegations are alleged word for word herein.

90.   Under Michigan law, the government may, under MCL 600.2950a(1), enjoin a person from engaging in conduct that violates MCL 750.411s, but such relief can only be granted if it is alleged *and shown* that a respondent violated MCL 750.411s.

91.   Before a person is deprived of the right to speak or communicate, the "trier of fact must *determine* that the statements or posts were definitively false" to constitutes defamation before an injunction against speech can issue.

92.   Federal circuit courts of appeal have only recently allowed injunctions on speech to prevent libel, *but* only *after* a finding on a final adjudication on the merits that the speech is unprotected" because otherwise would be a prior restraint.

93.   However, to be entitled to an *ex parte* PPO under the Michigan non-domestic PPO statute, a petitioner who activates the machinery of government need only "*alleges* facts that constitute... conduct that is prohibited under" MCL 750.411s without the trier of fact first determining or

making a final adjudication on the merits that the statements or posts were definitively false.

94.    As such and as provided by an illegal Michigan statute, an *ex parte* PPO can issue (as authorized under the Michigan non-domestic PPO statute) without the trier of fact first *determining* that the statements or posts were definitively false and without a final adjudication on the merits.

95.    Thusly, the Michigan non-domestic PPO statute illegally and unlawfully authorizes prior restraint on an *ex parte* basis contrary to the First Amendment.

96.    Based on the acts and actions of Defendants TINA TROY, DALE KAYS, and MAT KING, each has caused and/or materially furthered the effectuation of a prior restraint, issued on an *ex parte* basis, as unlawfully created under the Michigan non-domestic PPO statute without the trier of fact first determining that the statements or posts were definitively false an without a final adjudication on the merits by initiating the process (by Defendant TROY) or extending the unlawful reach and illegal effectiveness of a prior restraint by entering such in L.E.I.N. (by Defendants KING and KAYS).

97.    Defendant TINA TROY is subject to Section 1983 responsibility to defend the constitutionality of the issuance of *ex parte* prior restraint under

Michigan non-domestic PPO pursuant to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) and its progeny.

98. Defendant DALE KAYS is subject to Section 1983 responsibility in nominal damages and to defend the constitutionality of the issuance and furtherance of *ex parte* prior restraint under the Michigan non-domestic PPO as a public official/employee who entered the *ex parte* prior restraint into the PPO system.

99. Defendant DALE KAYS did these acts by written agreement with Defendant MAT KING. See **Exhibit P.**

100. Defendant MAT KING further effectuated the unconstitutional *ex parte* prior restraint via and into the Law Enforcement Information Network ("L.E.I.N.") and criminalized First Amendment protected speech.

101. Defendant MAT KING and/or Defendant DALE KAYS failed to halt or failed to terminate the effectuation of the unconstitutional *ex parte* prior restraint and instead, contrary to the protections of the First Amendment, did enter into the Law Enforcement Information Network ("L.E.I.N.") which constitutes prior restraint and which thereby violate(s) the First Amendment.

102. The non-domestic Michigan PPO statute effectuates a violation of the First Amendment to the United States Constitution as impermissible

*ex parte* granted prior restraint upon Plaintiff KEVIN LINDKE by Defendants TINA TROY, MAT KING, and Defendant DALE KAYS, both individually and by joint conspiracy.

## CONCLUSION

103.  Plaintiff KEVIN LINDKE has been deprived of his rights secured by the First and Fourteenth Amendments to the United States Constitution (to which he is entitled as a citizen of this Country) for which he seeks a remedy pursuant to federal law.

## DOCUMENTS

104.  Attached as **Exhibit A** is a copy of the Petition filed by Tina Troy to seek a Personal Protection Order pursuant to MCL 600.2950a.

105.  Attached as **Exhibit B** is a certified copy of the Register of Actions in the matter of *Troy v Lindke*.

106.  Attached as **Exhibit C** is a certified copy of the March 4, 2019 PPO, which contains the Social Media Injunction.

107.  Attached as **Exhibit D** is the first of four motions seeking to hold Plaintiff KEVIN LINDKE in contempt of court solely due to his constitutionally protected speech, which also contains the Bench Warrant for the arrest of Plaintiff KEVIN LINDKE for exercising his constitutionally protected speech.

108.  Attached as **Exhibit E** is the second of four motions seeking to hold Plaintiff KEVIN LINDKE in contempt of court solely due to his constitutionally protected speech, which also contains the Bench Warrant for the arrest of Plaintiff KEVIN LINDKE for exercising his constitutionally protected speech.

109.  Attached as **Exhibit F** is the third of four motions seeking to hold Plaintiff KEVIN LINDKE in contempt of court solely due to his constitutionally protected speech, which also contains the Bench Warrant for the arrest of Plaintiff KEVIN LINDKE for exercising his constitutionally protected speech.

110.  Attached as **Exhibit G** is a copy of a transcript of the arraignment hearing in which a total full cash bond of $45,000 was required from Plaintiff KEVIN LINDKE.

111.  Attached as **Exhibit H** is Plaintiff KEVIN LINDKE's motion to terminate (i.e. vacate) the March 4, 2019 PPO on inter alia First Amendment grounds.

112.  Attached as **Exhibit I** is the fourth of four motions seeking to hold Plaintiff KEVIN LINDKE in contempt of court solely due to his constitutionally protected speech, which also contains the Bench Warrant for the arrest of Plaintiff KEVIN LINDKE for exercising his constitutionally protected speech.

113.   Attached as **Exhibit J** is a *Temporary Restraining Order* issued by US District Court Judge Janet T. Neff of the Western District of Michigan similarly enjoining a state court judge for issuing injunctive orders in violation of the First Amendment as a form of prior restraint.

114.   Attached as **Exhibit K** is a copy of the published Michigan Court of Appeals decision in *TM v MZ*.

115.   Attached as **Exhibit L** is a copy of the Michigan non-domestic PPO statute, MCL 600.2950a, together with MCL 750.411h, MCL 750.411i, and MCL 750.411s.

116.   Attached as **Exhibit M** is an *ex parte* PPO issued by Judge Lane's Judicial Office on November 27, 2017 which enjoins respondent from "posting info about Petitioner on social media."

117.   Attached as **Exhibit N** is an *ex parte* PPO issued by Judge Lane's Judicial Office on August 14, 2018 which enjoins that respondent from "referencing [that] Petitioner on social media, text, or internet."

118.   Attached as **Exhibit O** is an *ex parte* PPO issued by Judge Lane's Judicial Office on February 12, 2018 which enjoins respondent from "referencing Petitioner on social media, text, or internet."

119.    Attached as **Exhibit P** is the agreement between the St Clair County Sheriff's Office and the St. Clair County Central Dispatch regarding entry of PPOs into L.E.I.N.

## RELIEF REQUESTED

1.      WHEREFORE, Plaintiff KEVIN LINDKE respectfully requests this Court to award one or more of the following—

      a.    Issue a declaration against any/all Defendants that the non-domestic Michigan PPO statute creates illegal prior restraint of Plaintiff KEVIN LINDKE's First and Fourteenth Amendment freedoms of free speech and expression and any/all Defendants violated Plaintiff KEVIN LINDKE's First and Fourteenth Amendment freedoms of free speech and expression;

      b.    Issue a declaration against any/all Defendants that the Michigan non-domestic PPO statute is unconstitutional as creating illegal prior restraint of Plaintiff KEVIN LINDKE's First and Fourteenth Amendment freedoms of free speech and expression and any/all Defendants violated Plaintiff KEVIN LINDKE's First and Fourteenth Amendment freedoms of free speech and expression;

c.  Issue a declaration the Michigan non-domestic PPO statute, facially and/or as applied, violates Plaintiff KEVIN LINDKE's procedural due process rights under the Fourteenth Amendment;

d.  issue an injunction against only Defendants MAT KING and/or DALE KAYS to enjoin any unconstitutional actions complained above and/or via the Michigan non-domestic PPO statute;

e.  Award $1.00 in nominal damages solely against Defendant DALE KAYS in his personal capacity;

f.  Award $1.00 in total nominal damages solely against Defendant TINA TROY;

g.  Award Plaintiff all applicable interest, costs, and attorney fees pursuant to 42 U.S.C. § 1988 against Defendant DALE KAYS (both capacities) and Defendant MAT KING and only against Defendant TINA TROY *if* she actually appears and defend the constitutionality of the Michigan non-domestic PPO statute.[5]

---

[5] No attorney fees or costs will be sought against Defendant TINA TROY if she defaults on this complaint and simply declines to defend the constitutionality of the Michigan non-domestic PPO statute.

Date: May 16, 2022                    RESPECTFULLY SUBMITTED:

                                      /s/ Philip L. Ellison
                                      **OUTSIDE LEGAL COUNSEL PLC**
                                      **PHILIP L. ELLISON (P74117)**
                                      PO Box 107
                                      Hemlock, MI 48626
                                      (989) 642-0055
                                      pellison@olcplc.com

                                      **ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record, hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel or parties of record.

Date: May 16, 2022

RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
PO Box 107 · Hemlock, MI 48626
(989) 642-0055
(888) 398-7003 - fax
pellison@olcplc.com

**ATTORNEY FOR PLAINTIFF**