UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LINDKE,

     Plaintiff,

                                Case No. 19-cv-11905

v.                            Hon. Matthew F. Leitman

MAT KING, *et al.*,

     Defendants.

_____/

### ORDER (1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 130) AND (2) DENYING PLAINTIFF'S MOTION TO STRIKE AMICUS BRIEF (ECF No. 137)

In this action, Plaintiff Kevin Lindke alleges that certain provisions of Michigan's Non-Domestic Personal Protection Order statute, Mich. Comp. Laws § 600.2950a (the "PPO Statute") violate the First and Fourteenth Amendments to the United States Constitution. (*See* Third Am. Compl., ECF No. 92, PageID.3161-3171.)  He brings claims challenging the PPO Statute against Defendants Mat King and Dale Kays.  King is the elected Sheriff of St. Clair County, Michigan; Kays is an employee with St. Clair County Central Dispatch.   Lindke contends that King and Kays are proper defendants in this action because they play a role in the enforcement of the PPO Statute by entering a PPO into, or causing a PPO to be entered into, Michigan's Law Enforcement Information Network.  As relief here,

Lindke seeks a declaration that certain provisions of the PPO Statute are unconstitutional and an injunction barring King and Kays from entering into the LEIN system any PPO that is entered pursuant to those provisions of the statute.

Defendants have now moved for summary judgment on the claims that remain in this action. (*See* Mot., ECF No. 130.)  They raise two non-merits-based objections to Lindke's claims.  First, they argue that the claims are barred by state sovereign immunity.  Second, they assert that even if the claims are not barred by state sovereign immunity, they are barred by *res judicata*.  The Michigan Attorney General, acting as an *amicus curiae* at the invitation of the Court, has raised an additional non-merits-based objection: that Lindke's claims are barred by collateral estoppel.[1] (*See* Amicus Br., ECF No. 135.)  The Court held a hearing on Defendants' motion on May 3, 2024.  For the reasons explained below, the motion is **DENIED**.

## I

The Court has previously described how Michigan courts have construed the PPO Statute and the background of Lindke's challenge to the PPO Statute. (*See* Order, ECF No. 125, PageID.3932-3947.)  In order to better understand the

---

[1] Lindke has filed a motion to strike the Michigan Attorney General's amicus brief. (*See* Lindke Mot., ECF No. 137.)  For the reasons explained on the record at the May 3, 2024, hearing on Defendants' motion, Lindke's motion to strike is **DENIED**.

arguments presented in Defendants' pending motion, the Court summarizes below the relevant portions of that background.

## A

The Court begins with the PPO Statute. The PPO Statute authorizes "an individual" to obtain "a personal protection order [(a "PPO")] to restrain or enjoin an individual from engaging in conduct that is prohibited under section 411h, 411i, or 411s of the Michigan penal code, 1931 PA 328, [Mich. Comp. Laws §§] 750.411h, 750.411i, and 750.411s." Mich. Comp. Laws § 600.2950a(1). Lindke's claims in this action focus on a provision of Section 411s that prohibits what has come to be known as "cyberstalking by proxy." *Buchanan v. Crisler*, 922 N.W.2d 886, 895-96 (Mich. App. 2018). Cyberstalking by proxy involves "a scenario in which a stalker posts a message about [a] victim, without the victim's consent, and as a result of the posting, others initiate unconsented contacts with the victim. These unconsented contacts, arising from the stalker's postings, result in the harassment of the victim. In this manner, by posting a message that leads to unconsented contact, the stalker is able to use other persons to harass the victim." *Id.* "As written, [Mich. Comp. Laws §] 750.411s is designed to address situations in which the victim is harassed by conduct arising from the[se] posts." *Id.*

The procedure under the PPO Statute to obtain a PPO barring cyberstalking by proxy is straightforward. A person who desires the protection of such a PPO

3

(called the "petitioner") may file a petition with the "family division of [a Michigan] circuit court" seeking "to restrain or enjoin an individual" (called the "respondent") from "engaging" in cyberstalking by proxy. Mich. Comp. Laws § 600.2950a(1). "[T]o be entitled to a PPO [that prohibits cyberstalking by proxy], a petitioner must establish that the respondent engaged in conduct that involved posting a message on the Internet or a computer without the petitioner's consent and that the four elements found in [Section 411s] are all satisfied." *TT v. KL*, 965 N.W.2d 101, 115-16 (Mich. App. 2020).

A circuit court may issue a PPO prohibiting cyberstalking by proxy after a contested hearing or, in limited circumstances, on an *ex parte* basis. *See* Mich. Comp. Laws § 600.2950a(12). More specifically, a circuit court may issue such a PPO on an *ex parte* basis only if "it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that immediate irreparable injury, loss, or damage [would] result from the delay required to effectuate notice or the notice will precipitate adverse action before a personal protection order can be entered." *Id.*

The PPO Statute requires that all PPOs be entered into Michigan's Law Enforcement Information Network ("LEIN").[2] In particular, the PPO Statute directs

---

[2] The LEIN "is a statewide computerized information system [… that] assist[s] the criminal justice community in the performance of its duties by providing and maintaining a computerized filing system of accurate and timely documented

each circuit court to "designate a law enforcement agency that is responsible for entering [PPOs] into the LEIN," Mich. Comp. Laws § 600.2950a(10), and further provides that a designated law enforcement agency "that receives a true copy of a [PPO] shall immediately […] enter the personal protection order into the LEIN." Mich. Comp. Laws § 600.2950a(17). Once a PPO is entered into the LEIN system, it "is immediately enforceable anywhere in this state by any law enforcement agency" that has "verified its existence" in the system. Mich. Comp. Laws § 600.2950a(21).

Finally, the PPO Statute sets forth the procedures available to a respondent who wishes to challenge a PPO that has been issued against him on an *ex parte* basis. Such a respondent "may file a motion to modify or rescind the [PPO] and request a hearing under the Michigan court rules … within 14 days after the order is served or after the individual restrained or enjoined receives actual notice of the [PPO]." Mich. Comp. Laws § 600.2950a(12). A circuit court must "schedule a hearing on [such a] motion … within 14 days after the motion … is filed." Mich. Comp. Laws § 600.2950a(13).

---

criminal justice information readily available to all criminal justice agencies." *United States v. Ellison*, 462 F.3d 557, 562 n.3 (6th Cir. 2006).

**B**

**1**

With this background of the PPO Statute in mind, the Court now turns to the facts of this case.  As the Court has previously explained, Lindke's claims arise out of a dispute between (1) Lindke, (2) the mother of Lindke's daughter (a woman whose initials are A.M.), and (3) a woman named Tina Troy. (*See* Third Am. Compl. at ¶¶ 8-9, ECF No. 92, PageID.3148.)  Troy is the maternal great-aunt of Lindke's daughter. (*See id*. at ¶ 8, PageID.3148.)

Lindke and A.M. have been engaged in a "heated and contested child custody battle" for several years. (*Id.* at ¶ 9, PageID.3148.)  Lindke says that the "heart" of the dispute is that certain members of A.M.'s family, including Troy, have allowed his daughter to "come into regular contact with a twice-convicted sex offender." (*Id.* at ¶ 10, PageID.3149.)

On March 4, 2019, Troy filed an *ex parte* petition in the St. Clair County Circuit Court for a PPO against Lindke pursuant to the PPO Statute (the "PPO Petition"). (*See* PPO Pet., ECF No. 92-1.)  The PPO Petition was assigned the Honorable Cynthia A. Lane.  In the PPO Petition, Troy claimed that Lindke engaged in direct cyberstalking when he sent her "multiple" Facebook direct messages after she "told him to stop more than once." (*Id.*)  Troy also alleged that Lindke committed cyberstalking by proxy in violation of Section 411s when he posted internet

6

messages that falsely accused her of "helping a violent sexual predator." (*Id*.) Judge Lane ultimately found that Lindke had committed both direct cyberstalking and cyberstalking by proxy, and she issued *an ex parte* PPO barring him from, among other things, contacting Troy and "posting comments about [Troy] on social media" (the "Ex Parte PPO"). (Ex Parte PPO, ECF No. 92-3.)

## 2

Before Judge Lane issued the Ex Parte PPO, the Office of the St. Clair County Sheriff had been designated as the law enforcement agency tasked with entering PPOs issued by the St. Clair County Circuit Court into the LEIN system. Pursuant to an agreement in place "for decades," the St. Clair County Central Dispatch "handle[d] the entry of [PPOs]" into the LEIN "on behalf of the St. Clair County Sheriff." (Affidavit of Tina Becker at ¶ 3, ECF No. 96-7, PageID.3461. *See also* Agmt., ECF No. 138-8.)

After Judge Lane issued the Ex Parte PPO, she ordered the Clerk of the St. Clair County Circuit Court to "file [the Ex Parte PPO] with the St. Clair County Sheriff" so that the sheriff's office could enter the order into the LEIN system. (Ex Parte PPO, ECF No. 92-3.) Thereafter, according to Lindke, Defendant King, the St. Clair County Sheriff, "direct[ed]" and "command[ed]" Defendant Kays, an "employee with St. Clair County Central Dispatch," to enter the Ex Parte PPO into the LEIN system. (*See* Third Am. Compl. at ¶¶ 3, 18, ECF No. 92, PageID.3147,

7

3151.)  Kays then did so. (*See id.* at ¶ 18, PageID.3151.)  From that point forward, the Ex Parte PPO became immediately enforceable against Lindke by any law enforcement agency in the State of Michigan that verified its existence in the LEIN system. *See* Mich. Comp. Laws § 600.2950a(21).

**3**

On March 13, 2019, Lindke filed a motion in the St. Clair County Circuit Court to terminate the Ex Parte PPO. (*See* Register of Actions, 92-2, PageID.3181.) Lindke argued that "any and all communications attributable to [him] … [were] all protected first amendment activities." (Lindke Mot. to Terminate, ECF No. 92-8, PageID.2376.)  He also maintained that Troy's allegations that he was "attacking" and "targeting" her on Facebook were "completely baseless and wholly without merit." (*Id.*, PageID.2377.)   In the motion, Lindke referred to the fact that the Ex Parte PPO had been entered on an *ex parte* basis, but he did not specifically argue that Ex Parte PPO was invalid because it had been entered on that basis.

Judge Lane held an evidentiary hearing on Lindke's motion on March 21, 2019. (*See* Register of Actions, ECF No. 92-2, PageID.3182.)  Both Troy and Lindke appeared for the hearing. (*See id.*)  On September 19, 2019, Judge Lane held a final hearing and heard "closing arguments" from the attorneys for both Troy and Lindke. (Register of Actions, ECF No. 29-3, PageID.1719.)

On October 28, 2019, Judge Lane issued a written decision granting in part and denying in part Lindke's motion to terminate the Ex Parte PPO. (*See* St. Ct. Decision and Order, ECF No. 29-2.) Judge Lane began her analysis by noting that, under Michigan law, "[w]hen a Motion to Terminate a PPO is timely filed, the petitioner has the burden of justifying the continuation of the PPO." (*Id.*, PageID.1710.) Judge Lane concluded that Troy had not "demonstrated reasonable cause to believe that [Lindke] had engaged" in ordinary or aggravated stalking in violation of Sections 411h or 411i when he sent Facebook direct messages to her. (*Id.*, PageID.1711.) But Judge Lane further found that Troy did establish that Lindke had committed cyberstalking by proxy in violation of Section 411s by making "untrue postings" about her "for the purpose of harassing and causing others to harass [her]." (*Id.*, PageID.1711-1712.)

Judge Lane then issued an amended PPO that was narrower in scope than the Ex Parte PPO (the "Amended PPO"). The Amended PPO "prohibit[ed Lindke] from posting defamatory statements about [Troy] on social media and/or from publishing such statements about her elsewhere." (*Id.*, PageID.1712.) Thus, the Amended PPO was not limited to the particular statements by Lindke that Judge Lane had found to be false.

9

**4**

Lindke then appealed to the Michigan Court of Appeals. (*See*, *e.g.*, Third Am. Compl. at ¶ 31, ECF No. 92, PageID.3155.) In his appeal – as in the circuit court – Lindke did not argue that the Ex Parte PPO was invalid because it had been issued on an *ex parte* basis. In fact, Lindke did not challenge the Ex Parte PPO at all on appeal. Instead, he sought relief only from the Amended PPO. *See TT*, 965 N.W.2d at 104 (noting that Lindke "appeal[ed] by right a *modified* nondomestic personal protection order (PPO) issued by the trial court under [the PPO Statute] following an evidentiary hearing on [Lindke's] motion to terminate the PPO") (emphasis added).) Lindke argued, among other things, that (1) "his speech was [] constitutionally protected under the First Amendment" because "he did not commit a written defamation through any of his posts," and (2) the Amended PPO "constituted an unconstitutional prior restraint." *Id.* at 113-14.

The Michigan Court of Appeals decided Lindke's appeal on October 29, 2020. The court first noted that Lindke did not challenge Judge Lane's conclusion that he had committed cyberstalking by proxy in violation of Section 411s. *See id.* at 116. The court then affirmed Judge Lane's conclusion that the specific posts at issue – *i.e.*, the posts about Troy allowing a convicted sex offender to have access to Lindke's daughter – were false and defamatory and thus could have been enjoined by a PPO. *See id.* at 118-19. The court said that Lindke's "posts on social media

10

effectively asserted that [Troy] was allowing LW, a convicted sex offender, to have ongoing access to [Lindke's] daughter," and it held that "[t]here was simply no truth whatsoever in [Lindke's] Facebook posts regarding the actions and conduct of [Troy]." *Id*.

But the court nonetheless held that the Amended PPO "was inconsistent with the law." *Id.* at 121.  The court explained that Judge Lane erred when she barred Lindke from "posting defamatory statements about [Troy] on social media and/or from publishing such statements elsewhere," because that prohibition was "much too broad and unconfined to the boundaries set in [Section] 750.411s." *Id.* at 120. The court stressed that any PPO that is issued to prevent defamatory cyberstalking by proxy must "be specifically limited to the adjudicated speech." *Id.*  Because the Amended PPO was not limited to Lindke's statements that Judge Lane had found to be false, the Michigan Court of Appeals vacated that order and "remand[ed] for proceedings consistent with this opinion." *Id.*  Thus, as construed by the Michigan Court of Appeals, a PPO that restrains speech can only be issued upon a finding that the challenged speech is not protected speech, which, in this case, means a finding that the speech was false.

The Amended PPO expired on its own terms while Lindke's appeal was pending.  It does not appear that there has been any attempt to revive the Amended PPO on remand following the Michigan Court of Appeals' ruling.

**II**

**A**

On June 26, 2019, Lindke filed this action under 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.)  The operative pleading before the Court is Lindke's Third Amended Complaint. (*See* Third Am. Compl., ECF No. 92.)  After substantial motion practice, two claims remain before the Court.  The claims are brought against King and Kays in their official capacity and against Kays in his personal capacity.

First, in Count I of the Third Amended Complaint, Lindke alleges that the PPO Statute violates the Due Process Clause of Fourteenth Amendment because it permits a circuit court to issue an *ex parte* PPO prohibiting cyberstalking by proxy without "any prior written notice [to the respondent] or the opportunity [for the respondent] to be heard." (*Id.* at ¶ 38, PageID.3156-3157.)  In Count III, Lindke says that the PPO Statute violates the First Amendment because it allows a circuit court to issue an *ex parte* PPO prohibiting cyberstalking by proxy "without … first determining that the statements or posts were definitively false and without a final adjudication on the merits." (*Id.*, PageID.3169.)

Lindke seeks two types of relief for these alleged constitutional violations.  First, he asks the Court to issue a "declaration that the PPO Statute, as authoritatively construed by the Michigan Court of Appeals, violates the First and Fourteenth Amendments to the extent that it permits a circuit court to [issue PPOs prohibiting]

allegedly-defamatory cyberstalking by proxy" without notice to the respondent and "without first determining, after a full adversarial hearing, that the speech to be enjoined is false." (Lindke Resp. Br., ECF No. 138, PageID.4320 at n.1.)  Second, Lindke requests that the Court enter "an injunction precluding enforcement against him of the PPO Statute, as authoritatively construed by the Michigan Court of Appeals, to the extent that the statute permits a circuit court to enjoin allegedly-defamatory cyberstalking by proxy without first determining, after a full adversarial hearing, that the speech to be enjoined is false and, thus, unprotected under the First Amendment." (*Id.*)  The Court notes that notwithstanding Lindke's request, the only injunction the Court could issue against the Defendants here, King and Kays, is an injunction prohibiting them from entering (or causing to be entered) into the LEIN system the allegedly-unconstitutional *ex parte* PPOs issued under the PPO Statute because, as explained above, that is the only role they play with respect to enforcement of the statute.

**B**

Defendants have now filed a motion for summary judgment on Lindke's remaining claims.  At the Court's direction, Defendants' motion does not attack the merits of Lindke's claims.  Instead, the motions raise only procedural defenses.[3]  In

---

[3] In its order issuing a schedule for Defendants' motion, the Court explained that "[t]he motion shall be limited to procedural issues." (Order, ECF No. 127, PageID.3978.)  The Court further noted that if it denied the motion, it would allow

their motion Defendants raise two primary arguments: (1) Lindke's claims are barred by state sovereign immunity and (2) Lindke's claims are barred by *res judicata*. At the Court's invitation (*see* Order, ECF No. 127, PageID.3979), the Michigan Attorney General filed an amicus brief on October 6, 2024. (*See* Amicus Br., ECF No. 135.) In that brief, the Attorney General argues that Lindke's claims are barred by collateral estoppel. (*See id.*) The Court held a hearing on the motion on May 3, 2024.

### III

Under Federal Rule of Civil Procedure 56, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not

---

Defendants to "file a later motion attacking the merits of [Lindke's] remaining claims." (*Id.*)

14

appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

**IV**

The Court begins with Defendants' argument that they are entitled to state sovereign immunity.[4]  For the reasons explained below, the Court declines to grant Defendants summary judgment on the basis of that immunity.

**A**

An injured party may not bring an action against a state or its agencies in federal court unless the state has waived its state sovereign immunity and consented to suit or Congress has abrogated that immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989).  The claims in this action are brought under 42 U.S.C. § 1983. "It is well established that § 1983 does not abrogate [state sovereign immunity], and that Michigan has not consented to the filing of civil rights suits against it in federal court." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir.

---

[4] "[T]he terms 'state sovereign immunity' and 'Eleventh Amendment immunity' are often used interchangeably to mean the same thing." *Reiner v. Canale*, 301 F.Supp.3d 727, 744 n. 9 (E.D. Mich. 2018) (quoting *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011)).  As the Sixth Circuit has explained, "[s]tate sovereign immunity is sometimes called 'Eleventh Amendment' immunity because that amendment reaffirmed the doctrine after it was thrown into doubt; however, this immunity emanates from our overall constitutional framework rather than existing in any one amendment." *Kanuszewski v. Mich. Dep't of Health and Human Svcs.*, 927 F.3d 396, 413 n.7 (6th Cir. 2019).  The Court uses the term "state sovereign immunity" above to refer to this immunity.

15

2013) (internal citations omitted).  Defendants argue that they may invoke state sovereign immunity here and that that doctrine bars Lindke's claims against them under Section 1983.  The Court disagrees.

The first question the Court must answer is: may the Defendants invoke state sovereign immunity even though they are county-level officials and not state officials?  They may.  While Defendants are not employees of the State, their conduct at issue in this action – *i.e.*, entering the Ex Parte PPO into the LEIN system – is compelled by the PPO Statute.  Indeed, as noted above, the PPO Statute requires Defendants to enter into the LEIN system all PPOs that they receive. *See* Mich. Comp. Laws § 600.2950a(17).  Under these circumstances, Defendants are acting as an "arm of the State" when they enter PPOs into the LEIN system (or when they cause such entry), and they are thus entitled to invoke state sovereign immunity. *McNeil v. Community Probation Services, LLC*, 945 F.3d 991, 995 (6th Cir. 2019) ("When a county official commits an alleged constitutional violation by 'simply [ ] complying with state mandates that afford no discretion, they act as an arm of the State,' not the county" and therefore are entitled to invoke state sovereign immunity) (quoting *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999)). *See also Ermold v. Davis*, 936 F.3d 429, 435 (6th Cir. 2019) (holding that state "sovereign immunity protect[ed]" county employee where employee took action that was compelled by state law because employee was "act[ing] on the [the State's]

16

behalf").[5]   Because the PPO Statute compels the Defendants to enter PPOs into the LEIN system, Defendants may invoke state sovereign immunity.

Lindke counters that even if the Defendants are entitled to invoke state sovereign immunity with respect to the claims he brings against them in their official capacity, Defendant Kays may not invoke that immunity as a defense to the claims against him in his *personal* capacity. (*See* Lindke Resp. Br., ECF No. 138, PageID.4326-4327.)  The problem with this argument is that Lindke cannot bring his claims for declaratory and injunctive relief against Kays in Kays' personal capacity because the claims seek relief directed at actions Kays undertakes in his *official* capacity.  As the Sixth Circuit has explained, "[j]ust as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity." *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.,* 150 F. App'x 389, 401 (6th Cir. 2005). *See also Constantino v. Mich. Dept of State Police*, 707 F.Supp.2d 724, 732 (W.D. Mich. 2010) ("In this action Plaintiffs seek to enjoin enforcement of the Michigan helmet law or, in the alternative, to enjoin the state

---

[5] *See also Bowles v. Sabree*, 2024 WL 1550833, at *2 (6th Cir. Apr. 10, 2024) (granting county official state sovereign immunity and concluding that because official was "complying with state mandates that afford[ed] no discretion," he was "act[ing] as an arm of the State") (internal punctation and citation omitted).

troopers' practice of stopping and detaining anyone on the basis of wearing an allegedly illegal helmet […]. The relief Plaintiffs seek can only be obtained from Defendant Munoz in his official capacity. Plaintiffs have accordingly failed to state a claim against Defendant Munoz in his individual capacity").[6] Simply put, the only viable claims Lindke has here are against the Defendants in their official capacity, and Defendants may invoke state sovereign immunity with respect to those claims.[7]

**B**

The Court next turns to whether any exception to state sovereign immunity applies here and permits Lindke to proceed with his claims against Defendants in their official capacity. Lindke invokes the exception described in *Ex parte Young*, 209 U.S. 123 (1908). "[U]nder the *Ex parte Young* exception, a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law." *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) (internal quotation marks and citation omitted). To fall

---

[6] Of course, the doctrine of state sovereign immunity would not bar a claim against Kays for damages in his personal capacity, but the Court previously dismissed that claim on the basis of qualified immunity. (*See* Order, ECF No. 125, PageID.3966-3970.)

[7] The Court has authorized Defendants to file a second motion for summary judgment. (*See* Section VII, *infra*.) The Court expects that in that motion, Defendants will seek summary judgment on the claims for injunctive and/or declaratory relief brought against Kays in his personal capacity for the reasons explained above.

within the *Ex parte Young* exception, (1) the "state official must possess some connection with the enforcement of the challenged law" and (2) it "must be likely that the official will enforce the law against the plaintiff." *Id.* (internal punctuation and citations omitted). Both elements of the exception are met here, and thus Lindke's remaining claims are not barred by state sovereign immunity.

## 1

### a

First, Defendants "possess some connection with the enforcement" of the PPO Statute. A defendant possesses the required connection when he is "actively involved with administering the challenged statute," *Id.* at 849 (internal brackets omitted), and the entry of a PPO into LEIN system – the conduct by Defendants at issue here – amounts to such involvement with the administration of the PPO Statute. Indeed, the PPO Statute, itself, identifies the entry of PPOs into the LEIN system as one step in the process through which the statute is administered and enforced. As explained above, the PPO Statute requires law enforcement agencies to enter PPOs into the LEIN system and then provides that once a PPO is so entered, it may be immediately enforced by any law enforcement agency in the State (so long as the agency verifies the PPO's existence in the LEIN system). Entry into the LEIN system therefore materially expands the circumstances under which, and areas of the State in which, a PPO may be enforced against a respondent. Thus, entering a PPO

into the LEIN system (or causing such a PPO to be entered) – as Defendants allegedly did here – equates to active involvement with the administration of the PPO Statute and constitutes "some connection" to the enforcement of the PPO Statute.

### b

Defendants counter that in *Lindke v. Tomlinson*, 31 F.4th 487 (6th Cir. 2022),[8] the Sixth Circuit rejected the argument that entry of a PPO into the LEIN system constitutes enforcement of the PPO Statute. Defendants' reliance on *Tomlinson* is understandable. There is language in *Tomlinson* that arguably could be read as supporting Defendants' position. But a careful reading of *Tomlinson* confirms that the Sixth Circuit did not hold that entry of a PPO into the LEIN system is not enforcement of the PPO Statute.

Like this case, *Tomlinson* involved a First Amendment challenge by Kevin Lindke to certain provisions of the PPO Statute. And as in this case, Lindke brought the claims in *Tomlinson* against St. Clair County Sheriff Mat King. But the allegations against King in *Tomlinson* were conclusory. The allegations against King, in total, were:

---

[8] As explained in text above, *Lindke v. Tomlinson* involved a claim brought by Kevin Lindke, the same Plaintiff who brings this action. To avoid any confusion between the two cases, the Court will refer to the Sixth Circuit's ruling as the *Tomlinson* decision.

69. The Michigan domestic PPO statute, as authoritatively construed by Defendants JOHN D. TOMLINSON and MAT KING, is a law existing and being utilized, as effectuated on June 16, 2020 pursuant to its authoritative construction, in violation of the First Amendment to the United States Constitution.

\* \* \*

75. Defendant MAT KING further effectuated the unconstitutional Michigan domestic PPO statute, as authoritatively construed, by enforcing and/or attempting to enforce the unconstitutional orders of the St Clair County Circuit Court premised on the Michigan domestic PPO statute, as authoritatively construed, when knowing or had reason to know that such action against First Amendment protected speech is expressly unconstitutional.

\* \* \*

76. Defendant MAT KING failed to halt or failed to terminate the effectuation of the unconstitutional Michigan domestic PPO statute, as authoritatively construed, and instead, contrary to the protections of the First Amendment, did seek to, has attempt[ed] to, and continues to enforce the unconstitutional Michigan domestic PPO statute, as authoritatively construed.

*Id.* at 496.

King moved to dismiss the claims against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure. He argued that Lindke had failed to plead sufficient facts to support his (Lindke's) claims under the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S.

544 (2007).  Unlike in this case, King did not argue that he was entitled to state sovereign immunity.

The district court granted King's motion to dismiss on the basis that Lindke's conclusory allegations did not satisfy the plausibility pleading standard set forth in *Twombly* and *Iqbal*.  The Sixth Circuit affirmed.  It held that Lindke's "purely conclusory" allegations could not "survive" King's motion to dismiss:

> We agree with the district court that these allegations cannot survive a motion to dismiss. Even construing these allegations in the light most favorable to Lindke, his claims are "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quotation marks and citation omitted). The complaint alleges merely that Sheriff King "effectuated" the PPO statute by "enforcing and/or attempting to enforce" and "fail[ing] to terminate" Judge Tomlinson's orders. Nowhere does it factually describe the actions Sheriff King took to enforce the order. The allegations are purely conclusory. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. See also Boxill v. O'Grady*, 935 F.3d 510, 518–19 (6th Cir. 2019) (holding that a plaintiff failed to state a claim because she did not offer "facts specific" to the defendants, relying instead on "broad, conclusory allegations").

*Tomlinson*, 31 F.4th at 496.

The Sixth Circuit then proceeded to address and reject arguments that Lindke had made for the first time on appeal in an attempt to salvage his claim against King:

On appeal, Lindke tries to inject new facts into the record, while acknowledging that "the exact additional actions of Sheriff King are not well known to Lindke." He asserts that Sheriff King entered the PPO into Michigan's Law Enforcement Information Network (LEIN); he contends that this is analogous to the circumstances in *McNeil*, where we concluded a plaintiff's claim against a sheriff survived […] because Tennessee law required county sheriffs to hold probationers in jail. *See McNeil*, 945 F.3d at 995. It is true that § 600.2950(10) requires a court to "designate a law enforcement agency that is responsible for entering a personal protection order into the law enforcement information network ...." The March 2016 PPO indeed designates the St. Clair County Sheriff's Department. But as noted by the district court, Lindke's complaint does not allege that Sheriff King entered the PPO into LEIN. *See Tomlinson*, 2021 WL 2434120, at *3 n.1. He also has not explained how entering a PPO into LEIN is analogous to keeping probationers in jail. *See id.* at *3 n.2. In that absence, we conclude that *McNeil* is distinguishable. There, the plaintiffs' complaint explicitly noted that the "county and sheriff ... detain[ed] them after arrest until they pay bail." *McNeil*, 945 F.3d at 993. The Michigan LEIN system is used to collect, protect, and disseminate information, and entering any information in that system is a far cry from a statutory responsibility to detain someone in jail. *See, e.g.*, Mich. Comp. Laws § 28.214.

*Tomlinson*, 31 F.4th at 496-97.

Defendants here emphasize the Sixth Circuit's language that "entering []

information" into the LEIN system is a "far cry" from the actions it found to

constitute enforcement of a statute in *McNeil*. They say that that language from

*Tomlinson* compels the conclusion that entry of a PPO into the LEIN system does

23

not constitute enforcement of the PPO Statute for purposes of *Ex parte Young*. This is a serious argument, but the Court respectfully disagrees with it.

*Tomlinson* did not *hold* that entry of a PPO into the LEIN system is not enforcement for purposes of *Ex parte Young*. That question was not even before the Sixth Circuit in that case. As noted above, the question in *Tomlinson* was whether the plaintiff pleaded sufficient facts to state a viable claim. Thus, the actual holding of the case was quite limited: that the handful of conclusory allegations against the sheriff fell far short of satisfying the plausibility standard from *Iqbal* and *Twombly*. *See Wright v. Spaulding*, 939 F.3d 695, 700-05 (6th Cir. 2019) (explaining that a holding is limited to the specific question actually presented by the parties and considered by the court).

Moreover, Lindke has done here what the Sixth Circuit said he failed to do in *Tomlinson*: he has "explained" how the entry of a PPO into the LEIN system constitutes enforcement of the PPO Statute. *Tomlinson*, 31 F.4th at 497. He has drawn the Court's attention to the provisions of the PPO Statute that (1) require a designated law enforcement agency to enter a PPO into the LEIN system and (2) authorize any law enforcement officer in Michigan to immediately enforce a PPO against a respondent upon verifying the existence of the PPO in the LEIN system. And he has explained that the required entry of a PPO into LEIN system equates to a role in the enforcement of the PPO Statute because such entry greatly expands the

circumstances under which, and areas of the State in which, a PPO may be enforced against a respondent.  *Tomlinson* does not cast any doubt upon this explanation as to how King and Kays enforce the PPO Statute because this explanation was not before the court in that case.[9]

For all of these reasons, *Tomlinson* poses no bar to the Court's conclusion that Lindke may invoke the *Ex Parte Young* exception to state sovereign immunity.

## c

Defendants next argue that their entry of the Ex Parte PPO into the LEIN system did not constitute enforcement the PPO Statute because that entry did not make the PPO "enforceable, by arrest." (Mot., ECF No. 130, PageID.4025.)  They insist that PPOs like the Ex Parte PPO – *i.e.*, PPOs that prohibit speech rather than conduct – are enforced through contempt of court proceedings, not through arrests by law enforcement officers in the field. (*See id.*, PageID.4026.)  And they say that

---

[9] In an earlier Order, the Court concluded that *Tomlinson* did support Kays' qualified immunity defense. (*See* Order, ECF No. 125, PageID.3969-3970.)  The Court's prior treatment of *Tomlinson* is not inconsistent with its conclusion above that *Tomlinson* does not control the question of whether the entry of a PPO into the LEIN system amounts to enforcement of the PPO Statute.  In its earlier order, the Court held only that the Sixth Circuit's ruling in *Tomlinson* supported Kays' position that he was entitled to qualified immunity because not "every reasonable officer in Kays' position would have understood that the First and Fourteenth Amendments prohibited him from entering the Ex Parte PPO into the LEIN system." (*Id.*, PageID.3970.)  But the question of what "every reasonable officer" would have understood is distinct from the question of whether entry of a PPO into the LEIN system amounts to enforcement of the PPO Statute.

Lindke's personal experience proves their point.  They note that "even though [Lindke] has had numerous PPOs entered against him as the result of petitions filed by numerous individuals, he has never been arrested by a law enforcement officer based upon the officer perceiving a violation of a PPO, as opposed to a judge issuing a bench warrant." (*Id.*)  They further suggest that officers in the field – who have substantial experience identifying unlawful *conduct* – lack the capacity to determine whether a respondent's conduct violates a PPO. (*Id.*, PageID.4026-4027.)

However, while it may be true as a matter of historical fact that Lindke has not been arrested by an officer for violating a PPO against speech, that does not mean that the Ex Parte PPO could not have been enforced against Lindke by a law enforcement officer in the field who confirmed the PPO's existence on the LEIN system.  Indeed, the PPO Statute says that all PPOs that have been entered into the LEIN system may be enforced by arrest; it makes no exception for PPOs directed at speech.  Moreover, the Court sees no reason why officers in the field could not enforce PPOs that prohibit speech.  Such a PPO would have to identify the prohibited speech, *see TT*, 965 N.W.2d at 120-21, and upon hearing that speech and confirming the existence of the PPO in the LEIN system, an officer could make an arrest.

For all of these reasons, the Court concludes that entry of a PPO into the LEIN system amounts to sufficient enforcement of the PPO Statute to satisfy the first element of the *Ex parte Young* exception.

**2**

The second element of the *Ex parte Young* exception is also satisfied because Lindke has shown a sufficient likelihood that the Defendants will again play a role in the enforcement of the PPO Statute against him.   Lindke has submitted a declaration in which he swears that he intends to engage in similar speech about Troy and others.[10] (*See* Lindke Decl., ECF No. 12-2.)  And there is every reason to believe that if he engages in that speech, Troy or another party would seek to obtain another *ex parte* PPO prohibiting the speech and that the circuit court would issue such a PPO on an *ex parte* basis.  Indeed, according to Lindke, Troy has sought to hold him in contempt on at least four occasions based upon alleged previous violations of PPOs that the circuit court had entered against him, and that in each of those cases, the circuit court issued a bench warrant for his arrest. (*See* Third Am. Compl. at ¶¶ 71, 74, ECF No. 92, PageID.3164-3165.)   Moreover, Defendants themselves acknowledge that Lindke "has had numerous PPOs entered against him as the result of petitions filed by numerous individuals." (Mot., ECF No. 130, PageID.4026.)  In the likely event that additional PPOs are issued against Lindke in

---

[10] Lindke says he fears that if he engages in similar speech, the PPO Statute would be enforced against him.  (*See* Lindke Decl. at ¶¶ 6-11, ECF No. 12-2, PageID.903-904. *See also* Third Am. Compl. at ¶ 28, ECF No. 92, PageID.3153.)  Lindke further says that his fear that the PPO Statute would be wrongly enforced against him has led to him refraining from engaging in speech he would otherwise would have published online. (*See id.*)

the future consistent with this past practice, the PPO Statute would compel the Defendants to enter those PPOs into the LEIN system.  Under these circumstances, the second element of the *Ex parte Young* exception is satisfied.

### 3

Finally, Defendants argue that Lindke should not be permitted to seek injunctive relief under *Ex parte Young* because "[a]n injunction against Sheriff King or Mr. Kays would do nothing to stop the issuance of a PPO without a full evidentiary hearing since they have no involvement in that process." (Mot., ECF No. 130, PageID.4030.)  This is another serious argument by Defendants, but the Court is not yet persuaded to grant summary judgment on this basis.

First, it appears to the Court that Defendants' argument relates more to the issue of redressability – a core component of Article III standing, *see, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) (noting that "redressability" is one of the elements that "constitutes the core of Article III's case-or-controversy requirement) – than to the question of whether Lindke may invoke the *Ex parte Young* exception to state sovereign immunity. *See Murthy v. Missouri*, --- S.Ct. ---, 2024 WL 3165801, at *9 (June 26, 2024) (explaining that a plaintiff must satisfy Article III standing requirements with respect to a request for injunctive relief).  And while there could potentially be a redressability problem with Lindke's request for relief, Defendants have not fully fleshed out an argument addressing that

problem.  Moreover, even if Defendants are right that the alleged ineffectiveness of

Lindke's requested injunction is properly raised in the context of an *Ex parte Young*

analysis, the Court would still deny summary judgment based upon their

ineffectiveness-of-an-injunction argument.  The only authority cited in the section

of Defendants' brief asserting this argument is two sentences from the Supreme

Court's ruling in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021).

(*See* Mot., ECF No. 130, PageID.4030.)   But Defendants have not sufficiently

explained how those sentences support their contention that *Ex parte Young* is

inapplicable under these circumstances.  For all of these reasons, the Court declines

to grant summary judgment now on the ground that Lindke cannot proceed under *Ex*

*parte Young* because his desired injunction would not prevent the *ex parte* issuance

of PPOs against him.[11]   Instead, the Court will permit Defendants to argue in their

next motion for summary judgment that because Lindke's requested injunction will

---

[11] Even if Lindke's requested injunction would not prevent the issuance of *ex parte* PPOs against him, he may still have standing to seek that injunction against Defendants.  There appears to be at least some authority for the proposition that a plaintiff has standing to seek injunctive relief that would partially redress his injury. *See*, *e.g.*, *Foretich v. United States*, 351 F.3d 1198, 12 (D.C. Cir. 2003) (explaining that under Supreme Court precedent, injunction could be appropriate even if it only "partially redress[es] the plaintiff's [] injury"); *E.T. v. Paxton*, 41 F.4th 709, 721 (5th Cir. 2022) (noting that "a partial remedy is constitutionally sufficient" to satisfy redressability requirement).  And it seems at least arguable that Lindke's requested injunction would partially redress his claimed injury by limiting the universe of law enforcement officers who may enforce the allegedly-unlawful *ex parte* PPOs against him.  The parties may develop and address this line of argument in future motion practice before the Court, if they wish to do so.

not prevent the issuance of *ex parte* PPOs against him, he lacks standing to seek his requested injunction and/or may not proceed under *Ex parte Young*. *See infra* at Section VII (authorizing Defendants to file a second motion for summary judgment).[12]

Second (and in any event), even if Defendants are correct that Lindke is not entitled to pursue his requested injunctive relief under *Ex parte Young*, that would not necessarily mean that Defendants are entitled to full summary judgment on Lindke's claims. As noted above, Lindke seeks declaratory relief in addition to injunctive relief, and there appears to be authority for the proposition that "[u]nder the *Ex parte Young* exception [to state sovereign immunity], a federal court can issue prospective injunctive *and declaratory relief*." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (emphasis added). Defendants have not presented argument as to how Lindke's requested declaratory relief would be ineffectual, and that is another reason that the Court declines to grant summary judgment to Defendants at this time based upon their contention that Lindke may not proceed

---

[12] The Court recognizes that it has an independent obligation to review whether Lindke has standing to seek the relief described above. *See*, *e.g.*, *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009) (noting that "it is well established that [a] court has an independent obligation to assure that standing exists"). The Court will undertake that review in connection with Defendants' forthcoming second motion for summary judgment. The Court anticipates being assisted in that review by the parties' briefing on this subject.

under *Ex parte Young*.  Defendants may address this issue in their next summary

judgment motion as well.

V

The Court next turns to Defendants' argument that Lindke's claims against

them are barred by *res judicata*. The Court is not yet persuaded that Defendants are

entitled to summary judgment on that basis.

A

When determining the preclusive effect of state court judgments under *res

judicata*, "federal courts are required to give the judgments of state courts the same

preclusive effect as they are entitled to under the laws of the state rendering the

decision." *Exec. Arts Studio v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir.

2004).  Accordingly, this Court applies Michigan law on *res judicata*.

"Under Michigan law, a 'second, subsequent action' is barred by *res judicata*

when '(1) the prior action was decided on the merits, (2) both actions involve the

same parties or their privies, and (3) the matter in the second case was, or could have

been, resolved in the first.'" *AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*,

874 F.3d 271, 274 (6th Cir. 2017) (quoting *Adair v. State*, 680 N.W.2d 386, 396

(Mich. 2004)).  "*Res judicata* is applied broadly by Michigan courts, barring 'not

only claims already litigated, but also every claim arising from the same transaction

that the parties, exercising reasonable diligence, could have raised but did not.'" *Id.*

31

(quoting *Adair*, 680 N.W.2d at 396).  As the parties raising *res judicata*, the Defendants bear the "burden of proving the applicability of the doctrine." *Baraga County v. State Tax Com'n*, 645 N.W.2d 13, 16 (Mich. 2002). *See also Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817 (6th Cir. 2010) (explaining that under Michigan law, "[t]he burden of proving *res judicata* is on the party asserting it").

**B**

Defendants contend that *res judicata* bars Lindke's claims here because "the issue remaining in this case" – *i.e.*, the "decision to issue the Ex Parte PPO" on an *ex parte* basis and Defendants' subsequent entry of that PPO into the LEIN system – "could have been, but was never raised" by Lindke in state court when he was challenging the Ex Parte PPO. (Mot., ECF No. 130, PageID.4032-4033. *See also* Reply Br., ECF No. 139, PageID.5189-5190.)  Thus, according to Defendants, because Lindke failed to raise his affirmative claims here as a defense in the state-court PPO proceedings, he cannot proceed on the claims in this forum. (*See id.*)

The Court is not yet persuaded that Michigan courts would apply *res judicata* under these circumstances.  In their initial motion and reply, Defendants did not cite any authority in which a Michigan court barred a plaintiff from asserting a claim that he could have, but did not, raise as a *defense* in a prior action.  They have still failed to cite persuasive authority in support of that proposition.

32

In their supplemental brief, Defendants identify the "most analogous case" as *Rondigo L.L.C. v. Twp. of Richmond*, 522 F. App'x 283 (6th Cir. 2013). But that case involved whether *res judicata* barred claims by a plaintiff who had earlier failed to assert them "as *counterclaims* in state court." (Supp. Br., ECF No. 144, PageID. 5209-5210 (emphasis added), quoting *Rondigo*, 522 F. App'x at 286.) The Court is not persuaded that the counterclaim analogy is a good fit here because Defendants have not shown that Lindke *could* have raised his current claims here as counterclaims in his PPO proceedings. The PPO Statute and Michigan Court Rules both allow for a respondent in PPO proceedings like Lindke to file a motion to terminate a PPO, but neither the rules nor statute expressly allow the filing of a counterclaim. *See* Mich. Ct. Rule 3.707(1)(b) ("[A] respondent may file a motion to modify or terminate an *ex parte* personal protection order or an *ex parte* order extending a personal protection order and request a hearing within 14 days after being served with, or receiving actual notice of, the order"); Mich. Comp. Laws § 600.2950(13) ("The individual restrained or enjoined [in an *ex parte* PPO] may file a motion to modify or rescind the personal protection order and request a hearing under the Michigan court rules"). Likewise, it is not clear that the family division of a circuit court – in which all PPO proceedings occur – has subject-matter jurisdiction to hear a counterclaim challenging the constitutionality of a state statute.

33

*See* Mich. Comp. Laws § 600.1021(1)-(2) (specifically listing jurisdiction of the family division over matters such as adoption and child support).  Simply put, at this stage of the proceedings, Defendants have not carried their burden to show that Lindke could have raised his affirmative claims here as counterclaims in the PPO proceedings.  Thus, it is not clear that *res judicata* would bar Lindke's claims under the primary case law cited by Defendants.

More importantly, Michigan courts have repeatedly held that the failure to raise a *defense* in one case is *not* a bar to bringing an affirmative claim that essentially mirrors that defense in a future case.  In the words of the United States Court of Appeals for the Tenth Circuit, "under Michigan case law, if a party does not rely upon his claim as a defense in the first action, he is not barred from later maintaining his action for affirmative relief in a subsequent suit." *Gates Learjet Corp. v. Duncan Aviation*, 851 F.2d 303, 307 (10th Cir. 1988).

In reaching this conclusion, the court in *Gates* relied on the Michigan Supreme Court's decision in *Ternes Steel Co. v. Ladney*, 111 N.W.2d 859 (Mich. 1961).  In *Ternes*, the Michigan Supreme Court rejected the argument that the failure to raise a breach of warranty defense in one action barred a party from bringing an affirmative breach of warranty claim in a subsequent suit.  As that court explained:

> If [a party] does not rely upon his claim as a defense to the first action […] he is not barred from subsequently maintaining his action for affirmative relief in an independent suit.

> In other words, plaintiff can plead defendant's breach of
> warranty as a defense in the first suit, he can plead it as a
> defense and as a counterclaim in the first suit, *or he can
> sue thereon subsequently for affirmative relief.*

*Terenes*, 111 N.W.2d at 861 (internal citations omitted; emphasis added).   And

courts appear to continue to follow this general rule.[13]   *See, e.g., Griffin v. Reznick*,

2008 WL 4741738, at *9 (W.D. Mich. Oct. 28, 2008) (surveying Michigan law and

concluding that the "Michigan Supreme Court has [not] overruled or materially

modified *Terenes's* statement of the State's *res judicata* doctrine" and that

"Michigan's lower courts have followed *Ternes* on this score"); *Bloch v. Bloch*, 2010

WL 3447897, at *5 (Mich. Ct. App. Sept. 2, 2010) (rejecting argument that *res*

---

[13] *Ternes* was decided in 1961.  In 1980, the Michigan Supreme Court changed its "approach" to *res judicata* and adopted what is known as the "'transactional' test to decide whether new claims relate to earlier ones." *Etherton v. Service First Logistics*, 807 F. App'x 469, 471 (6th Cir. 2020) (quoting *Adair*, 680 N.W.2d at 389).  "That test asks whether 'a single group of operative facts give[s] rise to the assertion of relief' in both cases." *Id.* (quoting *Adair*, 680 N.W.2d at 389).  There is some question as to whether *Ternes* survived this change. *See id.* at 471-72.  But as quoted and cited above, several courts, including the United States Court of Appeals for the Tenth Circuit and Michigan courts have continued to cite and apply *Ternes* long after 1980. Most notably, the Michigan Supreme Court has continued to apply *Ternes* even after Michigan adopted the transactional test. *See, e.g., Kellepourey v. Burkhart*, 423 N.W.2d 577, 577 (Mich. 1988) (vacating judgment of the Michigan Court of Appeals and remanding case to trial court "for consideration of," among other things, "whether plaintiff's defense in the Oakland Circuit Court case was 'independent of the cause of action asserted against him'" under *Ternes*) (quoting *Ternes*).  It is Defendants' burden to show that *Ternes* no longer remains controlling law, and, on the set of briefs currently before the Court, the Court is not yet prepared to hold that *Ternes* and the cases cited above applying *Ternes* do not control here.

*judicata* barred plaintiff's claim and explaining that a party in an divorce proceeding "could [have] properly [brought] his tort claim as either a counterclaim in the divorce action, raise[d] it as an affirmative defense in that action, *or [brought] a separate suit*") (emphasis added); *Bormuth v. Hillcrest Memorial Park*, 1998 WL 1989576, at * 1 (Mich. Ct. App. Oct. 16, 1998) ("Since plaintiffs did not rely on their present tort claim either in defense or as a counterclaim in the prior small claims action, *res judicata* does not preclude them from now suing on that claim"); *Bd. of County Road Comm'rs for County of Eaton v. Schultz*, 521 N.W.2d 847, (Mich. App. 1994) (explaining that "causes of action and defenses are not interchangeable" and holding that failure to fully litigate defense of release in one action did not bar plaintiff from pursuing breach of contract claim in second action).

In their supplemental brief, Defendants cite two cases from the Michigan Court of Appeals in which that court said that "[t]he allegations contained in plaintiff's present complaint, if proven, would have constituted a defense to the original foreclosure action. They are issues which could have, and should have, been raised in the original proceedings. Therefore, they are barred under the doctrine of *res judicata.*" *Boland v. C.D. Barnes Assoc., Inc*., 337 N.W.2d 581, 582 (Mich. App. 1983). *See also Sprague v. Buhagiar*, 539 N.W.2d 587, 588 (Mich. App. 1995) ("[A]s defenses or affirmative defenses, plaintiff's claims must have been raised in the earlier proceeding or are waived").   But neither *Boland* nor *Sprague*

acknowledge, much less discuss *Ternes*. Nor does either opinion include any analysis on this point. Moreover, as the Michigan Court of Appeals subsequently recognized, "the viability of *Sprague* is subject to questioning" because it appears to be in conflict with *Schultz*, *supra*, and "*Schultz* should have controlled as binding precedent." *Bass v. Peters*, 2017 WL 4844994, at ** 5-6 (Mich. Ct. App. Oct. 26, 2017). Thus, "*Sprague* should be applied with caution if at all." *Id.* at *6.

Under these circumstances, the Court is not yet prepared to hold that Defendants have carried their burden to show that *res judicata* bars Lindke's claims. The Court therefore declines to grant Defendants summary judgment on the basis of *res judicata* at this time.

## VI

Finally, the Court turns to *amicus*' argument that the doctrine of collateral estoppel bars Lindke's claims. (*See* Amicus Br., ECF No. 135.) "In Michigan, collateral estoppel applies when: (1) an issue has been actually litigated and determined by a valid and final judgment; (2) the same parties have had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel." *Peterson v. Hymes*, 931 F.3d 546, 554 (6th Cir. 2019). However, where, as in this case, "collateral estoppel is being invoked defensively," mutuality "is not required." *Id.*

Here, based on the current record before the Court, it is not clear that the precise claims that Lindke raises in this case were "actually litigated" and decided

in his state-court PPO action.  As described above, the question that remains in this case is whether, in violation of the First and/or Fourteenth Amendments, the PPO Statute allows a PPO prohibiting cyberstalking by proxy to be issued against a respondent on an *ex parte* basis. And while Lindke did mention in his motion to terminate the Ex Parte PPO that that PPO was issued without providing him advanced notice, it does not appear that he actually *argued* that the Ex Parte PPO should be terminated on that basis. (*See* Lindke Mot. to Terminate, ECF No. 92-8, PageID.2376.)   Likewise, in Judge Lane's opinion and order denying Lindke's motion to terminate, she never addressed an argument that the Ex Parte PPO was invalid or unconstitutional because it was issued without notice. (*See* St. Ct. Decision and Order, ECF No. 29-2.)   Thus, under the current record, the Court cannot conclude that Lindke "actually litigated" his current claims and/or that Judge Lane made any determination with respect to those claims in the state-court PPO action. The Court therefore declines to dismiss his claims on the basis of collateral estoppel.

## VII

For all of the reasons explained above, Defendants' motion for summary judgment (ECF No. 130) is **DENIED**.

In addition, for the reasons explained on the record at the May 3, 2024, hearing on Defendants' motion, Lindke's motion to strike the Michigan Attorney General's amicus brief (ECF No. 137) is **DENIED**.

The next step in this action is for Defendants to file a summary judgment motion attacking the merits of Lindke's claims.  As noted above, Defendants may also include in that motion arguments related to (1) whether Lindke lacks standing to seek his requested injunctive relief due to a lack of redressability and (2) whether Lindke may seek his requested declaratory relief under *Ex parte Young*.

The Court will convene a status conference with counsel to discuss a schedule for the filing of Defendants' motion.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 28, 2024

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 28, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126